*239 SCHOELEN, Judge:
Marvin O. Johnson appeals through counsel a May 14, 2010, Board of Veterans’ Appeals (Board) decision that denied (1) a disability rating in excess of 10% for rheumatic heart disease, (2) a disability rating in excess of 10% for right knee disability, (3) disability compensation benefits for diabetes mellitus on the basis of exposure to herbicides, and (4) reopening a claim for disability compensation benefits for hypertension. The Board granted the appellant a separate 10% disability rating for instability of the right knee.[2] The Board also remanded Mr. Johnson’s claim for an increased disability rating for a left knee disability and his entitlement to a total disability rating based on individual unem-ployability (TDIU). Because the Board did not reach a final decision on the remanded matters, the Court has no jurisdiction over them. See Kirkpatrick v. Nicholson, 417 F.3d 1361 (Fed.Cir.2005) (holding that the Court does not have jurisdiction over remanded claims).
Mr. Johnson does not address the Board’s denial of his claim for disability compensation benefits for diabetes mellitus or the Board’s determination that there was no new and material evidence to reopen a claim for disability compensation for hypertension. Accordingly, Mr. Johnson has abandoned any challenge to the Board’s decision regarding these matters and the Court need not address the Board decision with respect to these matters. Ford v. Gober, 10 Vet.App. 531, 535-36 (1997) (claims not addressed in appellant’s pleadings are considered abandoned).
Although the appellant states that he is appealing the Board’s findings that he is not entitled to a disability rating in excess of 10% for right knee instability and an increased schedular rating for right knee disability (degenerative changes), he makes no arguments challenging the Board’s determinations regarding the appropriate schedular rating for those conditions. Additionally, Mr. Johnson makes no arguments challenging the Board’s denial of a schedular rating in excess of 10% for rheumatic heart disease. The Board’s determinations in this regard therefore will be affirmed. See Coker v. Nicholson, 19 Vet.App. 439, 442 (2006) (stating that an appellant “must plead with some particularity the allegation of error”), rev’d on other grounds sub nom. Coker v. Peake, 310 Fed.Appx. 371 (Fed.Cir.2008) (per curiam order); Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc) (stating that the appellant bears the burden of persuasion on appeal to show Board error).
The appellant does contest the Board’s determination that he was not entitled to extraschedular rating consideration of his service-connected rheumatic heart disease and right knee disability under 38 C.F.R. § 3.321(b)(1) (2012). In this regard, Mr. Johnson argues that the Board failed to provide an adequate statement of reasons or bases for its conclusions that he is not entitled to a referral for extraschedular consideration for his heart disease and right knee disability on either an individual or on a collective basis. Because the Secretary’s interpretation of 38 C.F.R. § 3.321(b)(1) as limiting extraschedular ratings to individual disabilities is not in *240 consistent with the regulation or otherwise plainly erroneous, and the Board did not commit prejudicial error in its analysis of whether to refer Mr. Johnson’s heart and right knee disability for extraschedular consideration on an individual basis, the Board’s decision will be affirmed.
I. BACKGROUND
Mr. Johnson served in the U.S. Army from May 14, 1970, to December 23, 1971. Record (R.) at 846. In March 2008, he filed a claim for increased disability ratings for his service-connected disabilities, including rheumatic heart disease (then rated 10% disabling), and degenerative changes of the right and left knee (each knee then rated 10% disabling). R. at 239.
On March 14, 2008, Mr. Johnson underwent a VA compensation and pension examination of the joints. R. at 220-22. He informed the VA examiner that he had daily, constant pain in both knees. R. at 220. He characterized the pain as an ache that occasionally became sharp, and he noted that the pain was aggravated by walking, bending, climbing stairs, and standing. Id. He reported that his knee disability interfered with walking and standing for long periods. Id. He took Tylenol for the pain and occasionally used heat, ice, bilateral knee braces, and a cane to alleviate his pain. At the time of the VA examination, Mr. Johnson reported that he was self-employed detailing cars. R. at 221.
The examiner noted mild tenderness medially in the left and right knees. Id. Regarding the right knee, the examiner noted that there was no deformity or swelling. R. at 221. There was full extension of the right knee with mild pain, 0 to 105 degrees of flexion with mild pain medially, and no laxity, instability, or crepitus. Range of motion testing did not produce weakness, fatigue, or incoordination, and, with repetitive motion, there was no additional loss of range of motion of the right knee. Id. The examiner noted that Mr. Johnson had a normal gait except for a slight limp favoring the right knee. Id. X-rays showed mild arthritic changes in the right knee. R. at 222. The examiner diagnosed “[bjilateral knee degenerative joint disease,” noting an impression of “minor degenerative changes in the patello-femoral joints bilaterally.” R. at 221-22.
On March 25, 2008, Mr. Johnson underwent a VA heart examination for his service-connected rheumatic heart disease. R. at 217-18. The VA examiner concluded that there was “no evidence of valvular heart disease, nor myocardial disease on physical examination and certainly no symptoms or functional limitation.” R. at 218.
On April 18, 2008, a VA regional office (RO) denied Mr. Johnson’s claims and concluded that he was not entitled to TDIU. R. at 197-208. Mr. Johnson appealed this decision to the Board. R. at 36. On May 14, 2010, the Board issued the decision here on appeal. R. at 3-25. The Board denied referral for extraschedular consideration of Mr. Johnson’s heart disease and right knee disorder.
II. ANALYSIS
A. Combination of Disabilities
Mr. Johnson contends that the plain language of the Secretary’s regulation regarding extraschedular evaluations requires the Secretary to consider both the disability picture presented by an individual disability and by the service-connected disabilities collectively. In its decision, the Board did not consider Mr. Johnson’s entitlement to a referral for extraschedular consideration for his disabilities on a collective basis but determined that Mr. Johnson was not entitled to a referral for *241 extraschedular consideration for either his right knee disability or his rheumatic heart disease individually. The crux of the issue before the Court is whether § 3.321(b)(1) requires VA to consider multiple service-connected disabilities on a collective basis. The Court reviews the interpretation of statutes and regulations de novo. See 38 U.S.C. § 7261(a)(1); Lane v. Principi, 339 F.3d 1331, 1339 (Fed.Cir.2003); Bradley v. Peake, 22 Vet.App. 280, 290 (2008).
Determining a statute’s or a regulation’s plain meaning requires examining the specific language at issue and the overall structure of the statute. Gardner v. Derwinski, 1 Vet.App. 584, 586 (1991) (citing Bethesda Hosp. Ass’n v. Bowen, 485 U.S. 399, 403-05, 108 S.Ct. 1255, 99 L.Ed.2d 460 (1988)), aff'd sub nom. Gardner v. Brown, 5 F.3d 1456 (Fed.Cir.1993), aff'd, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994); see also Smith v. Brown, 35 F.3d 1516, 1523 (Fed.Cir.1994) (“Only by ... full reference to the context of the whole can the court find the plain meaning of a part.”); Frederick v. Shinseki, 24 Vet.App. 335, 338 (2011). “On review, if the meaning of the regulation is clear from its language, then that is the ‘end if the matter.’” Tropf v. Nicholson, 20 Vet.App. 317, 320 (2006) (quoting Brown v. Gardner, 513 U.S. at 120, 115 S.Ct. 552).
Under the VA statutory scheme, veterans with disabilities from an injury or disease contracted during active service and in the line of duty are entitled to service-connected disability benefits. 38 U.S.C. § 1110; see Thun v. Peake, 22 Vet.App. 111 (2008), aff'd sub nom. Thun v. Shinseki 572 F.3d 1366 (Fed.Cir.2009). Under 38 U.S.C. § 501, Congress granted the Secretary general rulemaking authority “to prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Secretary.” Additionally, Congress has granted the Secretary authority to adopt and apply a schedule of disability ratings based on the reduction in earning capacity from specific injuries or combination of injuries based on the average impairments of earning capacity resulting from such injuries in civil occupations. See 38 U.S.C. § 1155. Pursuant to this authority, the Secretary has established a disability rating schedule that is “used as a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service.” 38 C.F.R. § 4.1 (2012).
Once a particular disability has been found to be service connected, VA applies the criteria established in diagnostic codes (DCs) contained in the rating schedule to assign a disability rating that “represents] as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations.” 38 C.F.R. § 4.1; see also Hunt v. Derwinski, 1 Vet.App. 292, 296 (1991) (stating that the overall purpose of the statutory and regulatory scheme governing VA compensation law is reflected in the ratings schedule, which rates different mental and physical maladies based upon diminished earning capacity to pay “compensation to veterans when they have, in honorable service to their nation, suffered a loss that is reflected in the decreased ability to earn a living for themselves and their families”); 38 C.F.R. § 3.321(a). The ultimate percentage of a disability rating assigned to a veteran is “considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of the disability.” 38 C.F.R. § 4.1. Generally, all disabilities, including those arising from “a single disease entity,” are rated separately, and then all of the individual ratings *242 are combined using the table provided in 38 C.F.R. § 4.25 (2012). See Esteban v. Brown, 6 Vet.App. 259, 261 (1994). It is thus clear under the VA disability compensation system that VA assesses the appropriate schedular disability rating on a disability-by-disability basis. See Martinak v. Nicholson, 21 Vet.App. 447, 451 (2007) (stating that the disability rating schedule sets forth the terms and conditions under which disability compensation is to be provided through a list of “[DC]s and rating tables applicable for a specific disease or injury”).
It is against this statutory and regulatory framework that VA promulgated 38 C.F.R. § 3.321, which is entitled “General Rating Considerations.”[3] Subsection (a) of this regulation reiterates the language of section 1155 and states that the disability rating schedule is used for evaluating, among other things, the “degree of disabilities in claims for disability compensation.” That section of the regulation also reiterates that portion of section 1155 that explains that the disability rating schedule “represents the average impairment in earning capacity in civil occupations resulting from disability.” Thus, subsection (a) of the regulation is consistent with the VA disability scheme, in which disability ratings are assigned under the disability rating schedule to individual disabilities. See Esteban and Martinak, both supra,
Subsection (b) is entitled “Exceptional cases.” The first sentence of § 3.321(b)(1) reiterates that disability ratings are based upon the average impairment of earning capacity and states that the Secretary shall periodically readjust the disability rating schedule in accordance with experience. The second sentence of subsection (b)(1) states that to “accord justice” to the “exceptional case where the schedular evaluations are found to be inadequate,” VA officials (in particular the “Under Secretary of Benefits and the Director, Compensation Service”[4]) are authorized to approve an “extra-schedular evaluation for *243 impairments that are due to service-connected disability or disabilities.”
Mr. Johnson argues that the Board must consider referral for and, if referred, the Under Secretary for Benefits or the Director, Compensation Service, must consider awarding, an extraschedular rating based on the combined effect of all service-connected disabilities on a claimant’s “average earning capacity.” Appellant’s Brief (Br.) at 11-12; 38 C.F.R. § 3.321(b)(1). His argument appears to be based on the use of the plural nouns in phrases “schedu-lar evaluations” and “disability or disabilities” in subsection (b)(1). The Secretary argues that the use of the plural nouns in phrases “sehedular evaluations” and “disability or disabilities” is a recognition that a veteran may receive extraschedular ratings for one or more individual disabilities, and therefore contends that the plain language of the regulation does not require consideration of an extraschedular rating for the combined effect of multiple service-connected disabilities.
The Court concludes, after a careful reading of the regulation, its context within the overall statutory scheme, and consideration of the parties’ arguments, that the regulation is subject to competing meanings, and is ambiguous on this point. See Heino v. Shinseki, 683 F.3d 1372, 1379 (Fed.Cir.2012) (the structure of a statute can demonstrate that a statute is ambiguous); Otero-Castro v. Principi, 16 Vet.App. 375, 380 (2002) (“The basic principles that apply to construing statutes apply equally to construing regulations.” (citing Smith v. Brown, 35 F.3d at 1523)). Thus, it is not clear from the language of the regulation whether an extraschedular evaluation is to be awarded solely on a disability-by-disability basis or on the combined effect of a veteran’s service-connected disabilities.
It is well established that if the meaning of a regulation is unclear from the language, the Court should defer to the Agency’s interpretation of its own regulation so long as it is not inconsistent with the language of the regulation or otherwise plainly erroneous. Smith v. Nicholson, 451 F.3d 1344, 1349 (Fed.Cir.2006) (citing Auer v. Robbins, 519 U.S. 452, 461-62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997)); Mason v. Shinseld, 26 Vet.App. 1, 6 (2012); Tatum v. Shinseld, 24 Vet.App. 139, 142 (2010). The U.S. Supreme Court has held that an agency’s interpretation of its own regulations is entitled to substantial deference by the courts. See United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 202, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001); Auer, 519 U.S. at 461-62, 117 S.Ct. 905; Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); Martin v. Occupational Safety & Health Review Comm’n, 499 U.S. 144, 151, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991); Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). This high degree of deference applies even when VA’s interpretation of a regulation is first advanced during litigation. Reizenstein v. Shinseki, 583 F.3d 1331, 1335 (Fed.Cir.2009) (citing Cathedral Candle Co. v. U.S. Int’l Trade Comm’n, 400 F.3d 1352, 1364 (Fed.Cir.2005)).
Further, when a court is interpreting an administrative regulation, it “must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt.” Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). The administrative construction becomes “of controlling weight unless it is plainly erroneous or inconsistent with the regulation.” Id.; see also Haas v. Peake, 525 F.3d 1168, 1186 (Fed.Cir.2008). In an effort to demonstrate that he has interpret *244 ed the regulation as supporting a disability-by-disability construction, the Secretary cites a provision in the current VA Adjudication Procedures Manual Rewrite (Manual M21-1MR), which states that a claim is to be submitted for extraschedular consideration under § 3.321(b)(1) “if the schedu-lar evaluations are considered inadequate for an individual disability.” See Manual M21-1MR, pt. Ill, subpt. iv, ch. 6, sec. B.5.c (emphasis added). The Secretary has interpreted his regulation to apply only to individual disabilities and this interpretation is entitled to substantial deference. Because the regulation here leaves in doubt whether extraschedular consideration may be afforded on a disability-by-disability basis or based on the combined effect of multiple service-connected disabilities, VA is entitled to apply its own construction to the ambiguous regulation.[5] See Thun, 572 F.3d at 1369 (deferring to the same M21-1MR provision as an “authoritative interpretation” of § 3.321(b) regarding the RO and Board’s authority to reject referral for consideration of an ex-traschedular rating). This interpretation is entitled to substantial deference. See Haas, supra (holding that the court should defer to VA’s reasonable interpretation of a regulation that is not inconsistent with the language of the regulation).
Indeed, the Secretary’s disability-by-disability interpretation of § 3.321(b)(1) is consistent with the statutory and regulatory scheme. As discussed above, under the VA disability compensation scheme, disability ratings are assigned for each disability separately based on the level of severity and the unique symptoms associated with the particular disability. Section 3.321(b) requires that before an extrasche-dular evaluation is considered, VA must initially compare the level of severity and the symptoms of a particular service-connected disability with the established criteria found in the rating schedule for that disability. See § 3.321(b)(1); Thun, 22 Vet.App. at 115. If the rating criteria reasonably describe the claimant’s disability level and symptoms, then the veteran’s disability picture is contemplated by the rating schedule for that disability, the assigned schedular rating is deemed appropriate, and referral for consideration of an extraschedular rating is not warranted. Id., Thus, VA’s disability-by-disability approach is consistent with the regulatory language of § 3.321(b)(1) and with the overall disability compensation scheme.
Because the VA disability rating schedule is designed to consider the disabling effect of disabilities separately, no single DC provision will adequately assess the variety of symptoms involved with multiple service-connected disabilities. For example, in this case, any rheumatic heart disorder symptoms would per se not be contemplated in the DCs for a knee disability. Thus, when multiple service-connected disabilities are involved, VA would never be able to determine that a veteran’s disability picture resulting from all of his service-connected disabilities is adequately con *245 templated by the standards or criteria found in the rating schedule.
The Secretary’s interpretation of § 3.321(b) is also consistent with the regulations governing effective dates. 38 C.F.R. § 3.321(b)(3) specifies how to determine the effective date of an extraschedular rating, providing that “[t]he effective date of these extra-schedular evaluations granting or increasing benefits will be in accordance with § 3.400(b)(1) and (2) as to original and reopened claims and in accordance with § 3.400(o) in claims for increased benefits.” Subsections (b)(1) and (2), and (o) of § 3.400 all set an effective date in accordance with events that relate to a single disability claim, such as the date of receipt of the claim. However, a veteran may file separate disability compensation claims for separate conditions at different times, each with its own date of filing. See Elkins v. Gober, 229 F.3d 1369, 1375 (2000) (“[T]here is no requirement that a veteran’s various claims for relief be simultaneously filed and adjudicated, either upon initial review or on appeal. Rather, we have recognized that the unique statutory process of adjudication through which veterans seek benefits may necessarily require that the different issues or claims of a case be resolved at different times, both by the agency of original jurisdiction and on appeal.”). Given that the effective-date provision in subsection (b)(3) specifies how to set an effective date only where an extraschedular evaluation is based on a single-disability claim, it is difficult to conclude that the language of § 3.321(b)(1) clearly contemplates extraschedular consideration on a multiple-disability basis, which may involve multiple claims, or that the Secretary’s interpretation of this provision is inconsistent with the overall regulatory and statutory scheme.
After reviewing the language of § 3.321(b), the context in which it is applied, and the Secretary’s interpretation of § 3.321(b)(1), the Court concludes that the Secretary’s interpretation is entitled to substantial deference because it is not unreasonable, plainly erroneous, or inconsistent with the regulation or the statutory and regulatory scheme when viewed as a whole.[6] See Smith v. Nicholson and Tatum, both supra. For these reasons, the Court concludes that the Board was not required to consider whether Mr. Johnson was entitled to referral for extraschedular consideration of his right knee disability and rheumatic heart disease on a collective basis.
B. Individual Disabilities
Alternatively, Mr. Johnson argues that the Board erred in denying referral for consideration of an extraschedular disability rating for his rheumatic heart disease and right knee disability on an individual-disability basis. App. Br. at 5-10, 12-3. Specifically, he argues that the Board failed to give an adequate statement of reasons or bases for its decision that referral was not warranted. In this regard, he contends that the Board failed to compare “the level of severity and symptomatology of the claimant’s individual service-connected disabilities] with the established criteria found in the rating schedule for that disability,” as required by § 3.321(b)(1) and step one of Thun, supra, App. Br. at 7. Regarding step two of Thun, *246 he contends that the Board failed to discuss lay statements, which indicated that his disabilities have caused a marked interference with employment. He argues that these deficiencies in the Board’s statement of reasons or bases require remand.
The Board is required to provide a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board’s decision as well as to facilitate review in this Court. 38 U.S.C. § 7104(d)(1); Allday v. Brown, 7 Vet.App. 517, 527 (1995); Gilbert v. Derwinski, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Caluza v. Brown, 7 Vet.App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table); Gilbert, 1 Vet.App. at 57.
Regarding Mr. Johnson’s heart disease, the Board concluded that the record did not demonstrate that his disability picture was so exceptional or unusual as to render impractical the available schedular rating. R. at 15-16. In doing so, the Board pointed out that the medical evidence demonstrates that Mr. Johnson currently has no residuals of heart disease. R. at 16. Additionally, the Board concluded that there is no evidence that Mr. Johnson has any unusual factors such as frequent hospitalizations or marked interference with employment related to his heart disease. Id. The Court observes that despite Mr. Johnson’s argument that the Board failed to consider his lay statements, he does not point to any lay evidence indicating that he has any heart-related symptoms or that his heart disease causes frequent hospitalization or marked interference with employment. See Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc), aff'd per curiam, 232 F.3d 908 (Fed.Cir.2000) (table) (holding that the appellant bears the burden of demonstrating error on appeal). For these reasons, the Court concludes that Mr. Johnson fails to demonstrate that the Board’s reasons or bases for denying referral for extraschedular consideration for heart disease are inadequate. See Allday, Gilbert, and Caluza, all supra.
Regarding Mr. Johnson’s right knee disability, the Board concluded that, under step one of Thun, the “symptoms associated with the right knee disorder are reasonably contemplated by the separately assigned 10[%] evaluations for instability and limitation of motion.” R. at 16. Further, the Board concluded that, because the record shows that Mr. Johnson has continued to work for a number of years without any evidence that his right knee has caused “marked interference” with employment or frequent hospitalizations, his disability picture is not exceptional or unusual. Id. Mr. Johnson is correct that the Board decision does not contain a discussion comparing his disability picture with the criteria in the rating schedules for that disability. 22 Vet.App. at 115. The Board does not discuss whether the rating schedule criteria regarding instability and limitation of flex-ion or extension reasonably describe Mr. Johnson’s right knee disability, which is manifested by difficulty standing and walking for an extended time. Accordingly, the Court finds that the Board’s discussion under step one of Thun is inadequate.
Nonetheless, the Court finds that the Board’s error was harmless. See 38 U.S.C. § 7261(b); Conway v. Principi, 353 F.3d 1369, 1374 (Fed.Cir.2004). The Board’s finding, under step two of Thun, that Mr. Johnson’s right knee disorder does not present an exceptional disability picture with related factors such as *247 marked interference with employment or frequent hospitalization is clear and permits judicial review. Contrary to Mr. Johnson’s contention, the Board considered the lay statements of record regarding the effects of his right knee disability on his employment. The Board described those lay statements in its general discussion of the evidence, and acknowledged in its analysis section addressing extrasche-dular consideration the July 2009 statements of Mr. Johnson’s family members concerning his work capacity. The Board then found, however, that Mr. Johnson was able to maintain employment at two jobs and that there was no evidence in the record indicating that his right knee caused marked interference with that employment. To the extent that Mr. Johnson is concerned that the Board did not discuss potentially relevant lay statements within that portion of the Board’s statement specifically addressing extraschedular consideration, there is no requirement that the Board discuss evidence in any particular section of its decision. A Board statement generally should be read as a whole, Prickett v. Nicholson, 20 Vet.App. 370, 375 (2006), and if that statement permits an understanding and facilitates judicial review of the material issues of fact and law presented on the record, then it is adequate. See Allday, supra, The Court finds that the Board decision on appeal, considered in its entirety, meets this standard. Further, Mr. Johnson has not shown that the Board’s finding under step two of Thun is clearly erroneous based on the record as a whole. Because Mr. Johnson has not established that he has been prejudiced by any error that the Board may have committed in denying him entitlement to referral for consideration of an extraschedular rating for his right knee disability, the Court affirms the Board’s decision that an extraschedular rating for Mr. Johnson’s right knee disability is not warranted. See Shinseki v. Sanders, 556 U.S. 396, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009).
C. TDIU Remand
Mr. Johnson’s final argument is that the Board should not have adjudicated his entitlement to an extraschedular rating because the record is not complete as to the effect of his service-connected disabilities on his employment. App. Br. at 13-16. Mr. Johnson relies on the Court’s decision in Bramhley to bolster his argument. In Brambley, the Board specifically remanded the issue of a rating of TDIU for further development regarding the veteran’s employability, but also determined that the record was properly developed on the issue of whether each disability demonstrated a marked interference with employment for purposes of extraschedular evaluation. 17 VetApp. at 24. The Court found that it was difficult to understand how the Board could maintain divergent positions on the completeness of the record. The Court held that because both TDIU and extras-chedular consideration required “a complete picture of the appellant’s service-connected disabilities and their effect on his employability ..., it was premature for the Board to decline [referral for] extras-chedular consideration where the record was significantly incomplete in a number of relevant areas probative of the issue of employability.” Id.,
Here, the Board did not remand entitlement to a rating of TDIU because the record was incomplete regarding the effect on employability of any of Mr. Johnson’s service-connected disabilities for which the Board had denied referral for extraschedular consideration. Instead, the Board remanded the TDIU issue because it had already determined to remand the issue of the appropriate disability rating for left knee disability when, without waiv *248 ing his right to initial RO consideration of evidence of left knee disability, the appellant submitted new VA treatment records addressing the severity of his left knee disability. The Board concluded that, because the RO’s disposition of the left knee could effect the appellant’s entitlement to TDIU, a remand was warranted. Because we find lawful VA’s practice of considering referral for extraschedular consideration only on the basis of each individual disability, evidence showing the degree of disability for the left knee is not relevant to referral for consideration of an extrasche-dular rating for the appellant’s other service-connected disabilities. This is not a case where the Board reached an inconsistent decision regarding the completeness of the record. Therefore, the Court is not persuaded that the Board erred when it decided Mr. Johnson’s entitlement to referral for consideration of extraschedular ratings.
III. CONCLUSION
After consideration of the appellant’s and the Secretary’s pleadings, and a review of the record, the Board’s May 14, 2010, decision regarding the matters before the Court are AFFIRMED.
SCHOELEN, Judge, filed the opinion of the Court.
MOORMAN, Judge, filed a concurring opinion.
KASOLD, Chief Judge, filed a dissenting opinion.
DAVIS, Judge, filed a dissenting opinion in which BARTLEY, Judge, joined.

. The Board’s grant of the separate 10% sche-dular rating for right knee instability is a favorable finding, which the Court cannot disturb. See Medrano v. Nicholson, 21 Vet.App. 165, 170 (2007) (“The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority.”).

. 38 C.F.R. § 3.321(a) and (b)(1) provide:
(a) Use of rating schedule. The 1945 Schedule for Rating Disabilities will be used for evaluating the degree of disabilities in claims for disability compensation, disability and death pension, and in eligibility determinations. The provisions contained in the rating schedule will represent as far as can practicably be determined, the average impairment in earning capacity in civil occupations resulting from disability.
(b) Exceptional cases—
(1) Compensation. Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall ■ from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedu-lar evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

. The Secretary has advised the Court that, as of April 2011, the title of "Director of Compensation and Pension Service” no longer exists, and that position has since been separated into two distinct positions: "Director of Compensation Service” and "Director of Pension and Fiduciary Service.” Secretary’s Second Memorandum of Law, n. 1. Because this portion of the regulation and this particular case deal with compensation benefits, the Court will refer to this position as "Director, Compensation Service.”

. One of the dissenting opinions criticizes the Secretary because he chose to have the Deputy Director, of the VA Office of Regulation Policy and Management submit a statement regarding the scope of authority delegated in § 3.321(b), rather than the Under Secretary of Benefits, the Director of the Compensation Service, or the Secretary himself. The majority disagrees with this complaint. It is not for this Court to dictate to the Secretary whether he or an agent, whom he selects, informs the Court of VA’s interpretation of § 3.321(b). This is a decision that is fully within the scope of the Secretary’s authority and it is not for the Court to question his choice. Anyone who is duly authorized by the Secretary to speak for him does so on his behalf, and should be recognized by the Court as the voice of the Secretary.

. Mr. Johnson also attempts to bolster his argument by relying on the concurring opinion in Brambley v. Principi, 17 Vet.App. 20 (2003) (Steinberg, J., concurring). However, the Court has never adopted Judge Stein-berg's concurrence in Brambley as the controlling law on this issue, and a concurring opinion is not binding on the Court. See Maryland v. Wilson, 519 U.S. 408, 412-13, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (explaining that statements in a concurring opinion do not constitute binding precedent).