# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-1682

WILLIE E. TATUM, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 5, 2013                    Decided   February 26, 2014)

*Sandra E. Booth*, of Columbus, Ohio, for the appellant.

*Bryan W. Thompson* and *Nisha C. Hall*, Deputy Assistant General Counsel, with whom *Will A. Gunn*, General Counsel; and *R. Randall Campbell*, Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge,* and DAVIS and SCHOELEN, *Judges*.

KASOLD, *Chief Judge*: Veteran Willie E. Tatum appeals through counsel a January 31, 2012, Board of Veterans' Appeals (Board) decision that denied a total disability rating for prostate cancer beyond April 30, 2002. Mr. Tatum argues that the Board misapplied 38 C.F.R. § 4.115b, Diagnostic Code (DC) 7528, when it found, inter alia, that (1) the cessation of surgical, X-ray, antineoplastic chemotherapy, or other therapeutic procedure to treat Mr. Tatum's prostate cancer occurred in November 2001, and (2) the regulatory, minimum, six-month period for assignment of a 100% disability rating under DC 7528 ended on April 30, 2002. Because this appeal presents an issue of first impression regarding the interpretation of DC 7528, a panel decision is warranted. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990); Internal Operating Procedure (IOP) I(b)(2) and (4).

# I. BACKGROUND AND FACTS

Mr. Tatum served in the U.S. Marine Corps from May 1958 until March 1980. It is undisputed that he (1) was diagnosed with prostate cancer and underwent a radical prostatectomy on October 19, 2001, (2) underwent a second surgery on October 27, 2001, for incision and drainage of hematoma[1] with homeostasis and cystogram[2] and a third surgery on November 2, 2001, to aspirate and evacuate a hematoma, and (3) underwent several procedures from December 2 to 6, 2002, to insert and drain a Foley catheter.

Mr. Tatum filed for VA benefits for prostate cancer on February 28, 2002. In a March 2004 rating decision,[3] pursuant to DC 7528, he was granted a 100% disability rating from February 28, 2002, through April 30, 2002, and a 10% disability rating based on residuals of his prostatectomy beginning May 1, 2002. A 2008 Board affirmed the February 28 through April 30, 2002, effective dates for a 100% disability rating, as well as the 10% disability rating from May 1, 2002, based on residuals. On appeal of that Board decision, Mr. Tatum argued, inter alia, that the Board erred in approving the reduction of his 100% disability rating on May 1, 2002, because he had not been provided the notice required by 38 C.F.R. § 3.105(e) (Revision of Decisions). The Court rejected Mr. Tatum's argument for the reasons stated in *Tatum v. Shinseki*, 24 Vet.App. 139 (2010) [hereinafter *Tatum I*]. However, the Court also noted sua sponte that the Board failed to determine

---

[1] A "hematoma" is a localized collection of blood, usually clotted, in an organ, space, or tissue, usually due to a break in the wall of a blood vessel. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 832 (32d ed. 2012) [hereinafter DORLAND'S].

[2] A "cystogram" is a radiograph of the bladder. DORLAND'S at 463.

[3] The record of proceedings reflects that in a September 2002 rating decision, Mr. Tatum was provided a 100% disability rating effective February 28, 2002, through April 30, 2002, that was modified in a February 2003 rating decision to reflect a 100% disability rating effective October 3, 2001, through April 30, 2002, with a 10% disability rating beginning May 1, 2002. Then, in the March 2004 rating decision noted in the text above, it was recognized that Mr. Tatum had not filed his claim until February 28, 2002, and, therefore, the October 3, 2001, effective date assigned in the February 2003 decision was deemed to be a clear and unmistakable error and the effective date was revised back to February 28, 2002, with a 100% disability rating through April 30, 2002, and a 10% disability rating beginning on May 1, 2002. The February 28, 2002, effective date is not at issue in this appeal. Similarly, the 10% disability rating is not on appeal, except to the extent the effective date of Mr. Tatum's 100% disability rating is modified, in which case the effective date of his 10% disability rating would require an accompanying modification.

(1) the date of cessation of treatment for malignant neoplasms,[4] which triggers the regulatory, minimum, six-month period for assignment of a 100% disability rating provided in DC 7528, and (2) whether Mr. Tatum suffered a local reoccurrence or metastasis, which would warrant a continued 100% disability rating. *Id.* at 144-45. Those matters were remanded for further Board adjudication. *Id.* at 146.

In the decision on appeal, the Board found, inter alia, that (1) "[t]he cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure" to treat Mr. Tatum's prostate cancer "occurred in November 2001," (2) the December 2002 hospitalization did not constitute metastasis or local reoccurrence of Mr. Tatum's prostate cancer, and (3) the regulatory, minimum, six-month period for assignment of a 100% disability rating ended on April 30, 2002. Record (R.) at 4-5. In support of its findings, the Board noted that an August 2002 VA medical examination report states that since Mr. Tatum's surgery in November 2001, Mr. Tatum had not experienced any problems with hematuria and he had not required any hospitalizations or additional surgery. The Board also explained that Mr. Tatum had not identified, and his record did not include, "any evidence that shows any surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure after November 2001." R. at 9. Additionally, the Board distinguished between treatment for cancer, which the Board stated warrants a 100% disability rating for a minimum of six months, and treatment for the residuals of the cancer treatment, which the Board stated is rated based on the type and degree of residual. The Board again affirmed April 30, 2002, as the end date for a 100% disability rating.

## II. PARTY'S ARGUMENTS

*Appellant*

Mr. Tatum argues that the Board inadequately explained how it arrived at November 2001 as the correct date for calculating the "cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure" (hereinafter "treatment") as provided in DC 7528. He notes that his

---

[4] A "malignant neoplasm" is "any new and abnormal growth; specifically a new growth of tissue in which the growth is uncontrolled and progressive," and which tends to become progressively worse, resulting in death. DORLAND'S at 1239 (defining "neoplasm"), 1099 (defining "malignant"). Prostate cancer is a type of neoplastic disease of the genitourinary system. *Id.* at 771 (defining "genitourinary system" as consisting of the urinary and genital systems), 1864 Plate 44 (labeling the organs of the urogenital system), 280 (defining "cancer" as a neoplastic disease).

November 2001 and December 2002 hospitalization reports both reflect that his preoperative and postoperative diagnoses were cancer of the prostate, but he acknowledges that only his October 19, 2001, radical prostatectomy involved surgery to remove his cancer; each of the subsequent surgeries involved treatment for residuals of his prostatectomy. He further notes, however, that the Board explicitly found that no surgical procedures for the treatment of cancer occurred *after* November 2001 and, based on that finding, the Board determined that the date of cessation of treatment occurred in November 2001. Mr. Tatum therefore reasons that the Board implicitly found that his November 2001 surgery to aspirate and evacuate a hematoma constituted a therapeutic procedure, i.e., treatment, under DC 7528. Thus, Mr. Tatum further reasons that because the November 2001 and December 2002 surgeries each treated residuals of his radical prostatectomy, the Board's finding – that his November 2001 surgery represents the date of cessation of treatment within the meaning of DC 7528 while the December 2002 surgery does not – is internally inconsistent and therefore not supported by adequate reasons or bases.

In support of his argument, Mr. Tatum also notes that "X-rays" – one of the procedures cited in DC 7528 – are commonly used to diagnose a problem and are not necessarily intended to eradicate or halt the progress of cancer. He therefore reasons that the cessation of treatment under DC 7528 is not limited to treatment for cancer; rather, it also includes treatment for residuals of cancer. Similarly, he argues that "other therapeutic procedure," as used in DC 7528, necessarily refers to something other than chemotherapy or surgery for the treatment of cancer, and thus, he asserts it refers to subsequent treatment for the residuals of cancer or residuals of the cancer treatment.

Additionally, Mr. Tatum argues that he notified the Board that his records appeared incomplete and he contends that the Secretary only requested records for 2001 from Mr. Tatum's physician. He contends that all of his records were necessary in order to determine the date treatment ceased. He further argues that the August 2002 and May 2006 VA examination reports relied on by the Board were inadequate because the examiners did not review his medical records. Further, in the event his claim is remanded, he alleges that the Board member in charge of his case is hostile toward him, and any remand should be assigned to another Board member.

In the alternative, Mr. Tatum argues that if the Board's finding is affirmed as to November 2001 being the date of cessation of treatment within the meaning of DC 7528 because it is a

favorable finding, then the six-month mandatory 100% disability rating should continue through May 31, 2002.

Finally, during oral argument, Mr. Tatum agreed that if the Court rejects his argument that DC 7528 includes treatment for residuals of treatment, then only his alternative argument – that his 100% disability rating should be continued through May 31, 2002 – remains viable.

*Appellee*

The Secretary argues that the date of cessation of treatment as used in DC 7528 refers to the date of the last procedure to treat cancer. He further argues that "X-rays" refers to a type of radiation therapy used to treat cancer by "shrinking and killing cancer cells," Secretary's Brief (Br.) at 9,[5] and thus the phrase "other therapeutic procedure" refers to other cancer treatments. The Secretary contends that the Board's finding that November 2001 was the date of cessation of treatment actually means that Mr. Tatum did not have any qualifying treatment in November 2001; rather, his radical prostatectomy on October 19, 2001, was the final treatment, and thus (1) the November 2001 hospitalization was not included as the date from which the 100% disability rating was calculated, and (2) the Board properly calculated that the six-month period ended on April 30, 2002. The Secretary agrees, however, that to the extent the Court affirms the Board's finding that November 2001 is the date of cessation of treatment within the meaning of DC 7528 because it is a favorable Board finding, then the resulting end date of the six month 100% disability rating would be May 31, 2002.

### III. DISCUSSION

A. Cessation of Treatment

There is no dispute that pursuant to DC 7528 Mr. Tatum is authorized a 100% disability rating for six months after "the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure" for his prostate cancer. The central issue is the meaning of the phrase "the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure."

---

[5] Citing NATIONAL CANCER INSTITUTE, http://www.cancer.gov/cancertopics/factsheet/Therapy/radiation.

The "interpretation of a statute or regulation is a question of law," *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003), and our review is performed de novo, *Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004). We begin with the language and structure of the regulation to determine its plain meaning, which, if discernable is generally controlling. *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996); *see also Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (noting that the canons of statutory interpretation apply to interpreting regulations), *superseded by statute as stated in Samish Indian Nation v. United States*, 419 F.3d 1355 (Fed. Cir. 2005). We conclude that the plain meaning of the diagnostic code is that the quoted phrase refers to the cessation of treatment for the applicable malignant neoplasm of the genitourinary system, in this case, prostrate cancer.

DC 7528 provides:

Malignant neoplasms of the genitourinary system                                          100

Note– Following the cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure, the rating of 100 percent shall continue with a mandatory VA examination at the expiration of six months. Any change in evaluation based upon that or any subsequent examination shall be subject to the provisions of § 3.105(e) of this chapter. If there has been no local reoccurrence or metastasis, rate on residuals as voiding dysfunction or renal dysfunction, whichever is predominant.

38 C.F.R. § 4.115b, DC 7528 (2013).

Read as a whole, the Note applies exclusively to the DC for "malignant neoplasms of the genitourinary system," a type of cancer, and it provides a 100% disability rating for six months after various procedures cease. In addition to the 100% disability rating, the Note separately references rating based on a change in evaluation after the six-month period ends and rating based on residuals of voiding or renal dysfunctions if there is no local reoccurrence or metastasis. Thus, in context, we view the cessation of procedures referred to – i.e., six months after which a 100% disability will end – as the cessation of treatment for the cancer itself, as opposed to treatment for residuals secondary to the cancer.

Supporting this conclusion, we also note that "therapeutic" is defined as "of or relating to the treatment of disease or disorders by remedial agents or methods," or "providing or assisting in a

6

cure." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1223 (10th ed. 1999); *see also Jones v. Brown*, 41 F.3d 634, 638 (Fed. Cir. 1994) ("In determining the plain meaning of statutory language, 'legislative purpose is expressed by the ordinary meaning of the words used.'" (quoting *Ardestani v. INS*, 502 U.S. 129 (1991))); *see also Perrin v. United States*, 444 U.S. 37, 42 (1979) ( stating that "a fundamental canon of statutory construction is that, unless otherwise defined, words [in a statute] will be interpreted as taking their ordinary, contemporary, common meaning."). Thus, the term "therapeutic procedure" as used in DC 7528 commonly relates to the procedures to cure cancer, the disease, as opposed to treatment for residuals secondary to cancer or further treatment required as a result of the treatment for the disease.[6]

Considering the term "X-ray" in context, we also agree with the Secretary that the use of the term "X-ray" in the Note does not suggest that the scope of procedures covered by DC 7528 includes more than just treatment for the cancer. Rather, in context, "X-rays" refers to radiation therapy, which is used to treat cancer. Secretary's Br. at 9; *see also* DORLAND'S at 1597 (defining "X-ray" and noting that X-rays can strongly ionize and liberate tissue that they pass through, thus "mak[ing] them useful in treatment of various pathological conditions" and further referring to "radiotherapy"); DORLAND'S at 1573 (defining "radiotherapy" as "the *treatment* of disease by ionizing radiation" (emphasis added)); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) ("[T]he meaning of statutory language, plain or not, depends on context.").

Moreover, assuming arguendo that there is some ambiguity in the Note, we conclude that the Secretary's interpretation of the DC is reasonable, and we therefore defer to it. *See Smith v. Nicholson*, 451 F.3d 1344, 1350 (Fed. Cir. 2006) (holding that if the meaning of a regulation is unclear from its language, the Court should defer to the Agency's interpretation of its

---

[6] As an aside, and as noted in the "Background and Facts" section above, in *Tatum I* we remanded the matter for the Board to determine (1) the date of cessation of treatment for malignant neoplasms, which triggers the regulatory, minimum, six-month period for assignment of a 100% disability rating provided in DC 7528, and (2) whether Mr. Tatum suffered a local reoccurrence or metastasis, which would warrant a continued 100% disability rating. In that decision, we stated that "DC 7528 requires a 100% disability rating that continues for a minimum of six months from the time that *treatment* (i.e., 'surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure') *ceases for malignant neoplasms*." *Tatum I*, 24 Vet.App. at 142 (emphasis added). In reaching this conclusion, the Court in *Tatum I* did not have before it the parties' current arguments regarding the proper interpretation of DC 7528. However, after fully considering the parties' arguments, we note that our current holding is consistent with our statement in *Tatum I* that the plain meaning of the regulation; i.e., that the date referred to is the date on which treatment for the cancer ceases, and does not include treatment for residuals.

7

own regulation so long as it is not inconsistent with the language of the regulation or otherwise plainly erroneous); *Mason v. Shinseki*, 26 Vet.App. 1, 7 (2012), *aff'd*, No. 2013-7038, __ F.3d __ (Fed. Cir. Feb. 21, 2014); *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842-43 (1984).

The Secretary maintains that the date of cessation referred to in DC 7528 is the date when the cancer was completely eradicated; i.e., the date of Mr. Tatum's radical prostatectomy, October 19, 2001, when the malignant neoplasm of the genitourinary system was removed. The Secretary contends that this interpretation is supported by an overall reading of the Federal Register, in which the Secretary notes that an evaluation six months following the assignment of total benefits will "take into account the wide array of possible side-effects and complications of treatment" and which further explains that, while disability often follows cancer treatment, it cannot be presumed that there will be residuals in every case, thus, each veteran's residuals will be rated on an individual basis. 59 Fed. Reg. 2523, 2526 (Jan. 18, 1994) (amending 38 C.F.R. § 4.115b). We find this to be a fair reading of the Federal Register and consistent with the Note.

Moreover, because the Secretary's interpretation of DC 7528 is reasonable (and consistent with our own view of the regulation), we will not further address possible alternative interpretations proffered by Mr. Tatum. *See Smith v. Nicholson* and *Johnson*, both *supra*. In sum, we hold that the date of "cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure" refers to the date the veteran received final treatment for cancer, and does not include treatment for residuals of cancer or the residuals of the treatment for cancer.

### B. Board's Reasons or Bases

The Board found that the date of cessation of treatment was November 1, 2001, the date on which Mr. Tatum completed his surgery to aspirate and evacuate a hematoma that developed shortly after the October 2001 surgery to remove the prostrate cancer. We agree with Mr. Tatum that the Board's reasons or bases for this finding are confusing. The Board made two seemingly contradictory statements to explain why it selected November 1, 2001, as the date of cessation of treatment. On the one hand, the Board made statements that indicate that it properly interpreted the date of cessation of treatment as involving the last date on which Mr. Tatum was treated for his prostate cancer. This is evidenced by the Board's statement that there was an "important distinction

between treatment for 'cancer' (in the form of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure) and treatment for the residuals of the cancer treatment." R. at 11.

On the other hand, the Board stated that November 2001 marked the cessation of treatment because Mr. Tatum did not have "any residual *prostate cancer* treatment," including hospitalizations or additional surgery, after November 2001 (R. at 9), – when the record is clear and undisputed that Mr. Tatum's cancer was removed during the October 19, 2001, surgery. Indeed, it is the Board's statement that Mr. Tatum did not have "any residual *prostate cancer* treatment," after November 2001 that creates the foundation for Mr. Tatum's reasons-or-bases argument that if his treatment for residuals of prostrate cancer in November constituted treatment under DC 7528, then his similar treatment for residuals of prostrate cancer in December 2002 also constituted treatment under DC 7528.

The Secretary argues that these statements are not contradictory, but rather, by finding November 2001 as the date of cessation of treatment for cancer, the Board meant that Mr. Tatum did not have any treatment in November 2001, as evidenced by the fact that the Board assigned April 30, 2002 – six months from the end of October 2001 – as the end of the 100% disability rating. While the Secretary may be correct in his explanation of the Board's confusing statements, this is not what the Board stated. Rather, the Board clearly found that the date of cessation of treatment was November 2001. *See* R. at 4 ("The cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure to treat the Veteran's prostate cancer occurred in November 2001."), 9 ("November 2001 marked the cessation of any surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure, and no medical evidence to the contrary has been presented.").

As we have explained above in our discussion of the proper interpretation of DC 7528, the Board's finding that the date of cessation of treatment was November 1, 2001, although favorable to Mr. Tatum, is not consistent with the regulation. This is because there is no dispute that Mr. Tatum's cancer was removed during the October 19, 2001, surgery. Indeed, October 19, 2001, is the date the Board should have used when determining the beginning and end of the six-month period for a 100% disability rating. Nevertheless, we do not feel compelled to modify such a specific finding because the finding by the Board is a favorable finding that the Court has stated may not be overturned, and given the Secretary's agreement that if we conclude that the Board's finding is

9

favorable we should not overturn it, we find no legal requirement to do so. *See Medrano v. Nicholson,* 21 Vet.App. 165, 170 (2007) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority."), *aff'd in part*, *rev'd in part sub nom. Medrano v. Shinseki*, 332 Fed. App'x 625 (Fed. Cir. 2009). *But see Johnson v. Shinseki*, 26 Vet.App. 237, 252 n.10 (2013) (Kasold, J., dissenting) (noting, as an aside, that the proposition that the Court cannot disturb a finding favorable to a veteran is dictum and appears to misstate the law because the plain language of 38 U.S.C. § 7261(a)(3) only states that the Court may set aside findings other than "findings of material fact *adverse to the claimant*"). Additionally, because we find that the date of cessation of treatment under DC 7528 is the date on which treatment for cancer ended, any error the Board made explaining the basis for its favorable finding regarding the date of cessation of treatment is harmless. *See* 38 U.S.C. § 7261(b)(2) (Court must take due account of the rule of prejudicial error).

Accordingly, inasmuch as the Board found that the cessation of treatment "occurred in November 2001" (R. at 4), one month after Mr. Tatum's radical prostatectomy, the November date is favorable to the veteran, and we affirm that finding. Thus, given this finding and the agreement of both parties, the six-month 100% disability rating ended on May 31, 2002, and the Board decision will be modified to reflect that. *See* 38 U.S.C. § 7252(a) (Court can, inter alia, modify Board decisions); *Seri v. Nicholson*, 21 Vet.App. 441, 444 (2007) (modifying Board decision on appeal); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (remand unnecessary where it would impose additional burdens on the Board with no benefits flowing to the veteran).

## C. Remaining Arguments by Appellant

Because we hold that the date of "cessation of surgical, X-ray, antineoplastic chemotherapy or other therapeutic procedure" refers to the date on which treatment for the cancer itself was concluded, as opposed to the date treatment for the residuals or side effects of cancer or the residuals of cancer treatment was concluded, Mr. Tatum's additional arguments that the Secretary failed to fulfill his duty to assist in getting records and that the 2002 and 2006 VA examiners did not review the medical files need not be further addressed. This is because there is no dispute that Mr. Tatum's cancer was eradicated with the October 19, 2001, surgery, and the failure to obtain any medical records after that date has no effect on our holding herein or the assigned end date for the six-month

100% disability rating. *See* § 7261(b)(2); *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009) (holding § 7261(b)(2) requires the Veterans Court to "apply the same kind of 'harmless-error' rule that courts ordinarily apply in civil cases").

Similarly, given our holding here today, and the lack of any need to remand this matter on the issue discussed above, Mr. Tatum's argument that a different Board member should be assigned on remand is moot.

Nevertheless, we note that during oral argument the Secretary contended that notice from Mr. Tatum's counsel that records appeared to be missing did not trigger the Secretary's duty to assist. We caution that when a claimant informs the Secretary that records appear to be missing, the Secretary should, at a minimum, respond to the claimant. *See Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 300 (2008) ("[T]he content of information and evidence received by VA may require an appropriate response, consistent with the duty to assist."); *Godfrey v. Derwinski*, 2 Vet.App. 352, 356-57 (1992) (noting that the Board may not ignore issues raised by a veteran in his appeal); *Godwin v. Derwinski*, 1 Vet.App. 419, 425 (1991) (finding that appellant was entitled to a response from the Secretary when he requested certain records, and specifically noting that "[i]nherent in the duty-to-assist obligation . . . is a requirement for the Secretary to respond to a claimant's request for VA assistance one way or the other"), *abrogated on other grounds by McGinnis v. Brown*, 4 Vet.App. 239 (1993); Veterans Benefits Administration Adjudication Procedures Manual Rewrite (M21-1MR), pt.I, ch.1, §§ B-I (p. 1-B-10), C-e (p. 1-C-10) (directing adjudicators to request more detailed information from a claimant if the claimant's initial description of potentially relevant records lacks sufficient detail); *see also* 38 U.S.C. § 5103A (duty to assist claimants); *Haney v. Nicholson*, 20 Vet.App. 301, 305 (2006) (Secretary "is required to provide fair process in the adjudication of claims") (citing *Austin v. Brown*, 6 Vet.App. 547 (1994), and *Thurber v. Brown*, 5 Vet.App. 119 (1993)).

## IV. CONCLUSION

The Board's January 31, 2012, decision is MODIFIED to reflect that Mr. Tatum is entitled to a 100% disability rating through May 31, 2002, and a 10% disability rating thereafter, and – as modified – is AFFIRMED.