LANCE, Judge,
with whom MOORMAN, Judge, joins, dissenting:
With due respect to my colleagues in the majority, I would hold that the Secretary’s position was substantially justified, thereby precluding an EAJA award, and so I must dissent.
The crux of the majority’s substantial justification analysis is that “there is really only one factor weighing in favor of finding substantial justification at the administrative stage: the Board’s obligation to follow judicial precedent,” which the majority contends is outweighed by five opposing factors. Ante at 87. This analysis misapplies the totality-of-the-circumstances test for substantial justification, transforming it from a substantive “judgment call,” Chiu v. United States, 948 F.2d 711, 715 (Fed.Cir.1991), into a rote mathematical calculation, and it places the Secretary and the Board in an impossible position for future cases.
First, the majority opinion undervalues the factors weighing in favor of a finding of substantial justification. Its grudging allowance that the Board’s decision was consistent with then-binding judicial precedent obscures the fact that the Board could do nothing but follow this Court’s precedent.[7] Our case law is clear that the Court’s “decisions are ‘binding as of the date the decision is issued and are to be considered and, when applicable, are to be followed by VA agencies of original jurisdiction, the Board, ... and the Secretary in adjudicating and resolving claims.’ ” Ramsey v. Nicholson, 20 Vet.App. 16, 38 (2006) (quoting Tobler v. Derwinski, 2 Vet.App. 8, 14 (1991)); see Ribaudo v. Nicholson, 20 Vet.App. 552, 560 (2007) (en banc) (holding that to permit the Board to ignore a decision of the Court while an appeal was pending to the Federal Circuit “would be to allow an executive agency to nullify the effect of a judicial decision”).
When the Board issued its July 2014 decision on Mr. Butts’s appeal, a five-judge majority of this Court, sitting en banc, had determined that 38 C.F.R. § 3.321(b) was ambiguous and “that the Secretary’s interpretation [was] entitled to substantial deference because it is not unreasonable, plainly erroneous, or inconsistent with the regulation or the statutory and regulatory scheme when viewed as a whole.” Johnson v. Shinseki (Johnson I), 26 Vet.App. 237, 245 (2013) (en banc), rev’d sub nom. Johnson v. McDonald (Johnson II), 762 F.3d 1362 (Fed.Cir.2014). The Board does not possess the authority to formally interpret VA regulations.[8] See *90 Hudgens v. Gibson, 26 Vet.App. 558, 563 n. 5 (2014) (“[T]he Board is not the body tasked with interpreting regulations on the Secretary’s behalf.”), rev’d sub nom. Hudgens v. McDonald, 823 F.3d 630, No. 2015-7030, 2016 WL 2893254 (Fed.Cir. May 18, 2016). Thus, the Board could do nothing but apply the interpretation of § 3.321(b)(1) endorsed by the Court in Johnson I. Ramsey, 20 Vet.App. at 38; Tobler, 2 Vet.App. at 14 (holding that the Court’s decisions are binding “unless or until overturned by this Court en banc, the United States Court of Appeals for the Federal Circuit, or the Supreme Court”). The fact that the Board did not specifically cite Johnson I does not change this. See Jennings v. Mansfield, 509 F.3d 1362, 1366 (Fed.Cir.2007) (rejecting the notion that the Board is required “to use particular statutory language, or ‘terms of art’ ”).
At the same time, the majority wholly ignores the significance of the merits of Johnson I. Although the Federal Circuit ultimately reversed this Court’s decision in Johnson II, the fact that five Judges of this Court—including two Judges in the majority of this case—determined that the Secretary’s interpretation of § 3.321(b)(1) was reasonable suggests that there is, at a minimum, “a dispute over which reasonable minds could differ.”[9] Norris v. S.E.C., 695 F.3d 1261, 1265 (Fed.Cir.2012). “[A] position can be justified even though it is not correct, and ... it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct.” Pierce v. Underwood, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).
On the other side of the scale, the majority’s analysis overstates the factors weighing against a finding of substantial justification. Although the majority discounts the Secretary’s interpretation of § 3.321(b)(1) as both contrary to “the plain wording” of the regulation and unsupported by any policy justification, ante at 86, merely saying that the Secretary’s interpretation was wrong in different ways does not give that error more weight. To hold otherwise would essentially conflate substantial justification with prevailing party status, which cannot be the case. See Moskal v. United States, 498 U.S. 103, 109, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (noting “the established principle that a court should ‘give effect, if possible, to every clause and word of a statute’” (quoting United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955))).
Similarly, although the majority places great weight on the fact that § 3.321(b)(l)’s authorizing statute, 38 U.S.C. § 1155, “is not silent” but “authorizes the Secretary to consider collective disabilities for evaluating a veteran’s entitlement to disability compensation,” ante at 84, its analysis ignores the fundamental structure of VA’s compensation system, *91 which rates each disability individually and accounts for combined effects using VA’s combined ratings table, see 38 C.F.R. § 4.25 (2015); see also 38 U.S.C. § 1157 (requiring the Secretary to provide for the combination of disability ratings for disabilities incurred in multiple periods of service). Indeed, “the combined ratings table is the only method VA employs to rate multiple disabilities together.” Gazelle v. McDonald, 27 Vet.App. 461, 467 (2016); see id. at 471 (holding that the combined ratings table must also be used to determine the proper rate of special monthly compensation (SMC) under 38 U.S.C. § 1114(s)). Thus, far from being contrary to or even unsupported by statute, the Secretary’s proffered interpretation of § 3.321(b)(1) treats extraschedular ratings in exactly the same manner as schedular ratings and SMC.[10]
Finally, and most critically, it does not appear that the majority has fully considered the possible—and potentially wide-reaching—consequences of its decision. As I wrote in Cline v. Shinseki, I am “troubled by the Secretary’s failure to argue substantial justification in response to the vast majority of applications for attorney fees and expense filed pursuant to the EAJA before this Court.” 26 Vet.App. 325, 333 (2013) (Lance, J., dissenting). Congress’s intent when it enacted the EAJA was to “ensure that litigants ‘will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.’ ” Patrick v. Shinseki, 668 F.3d 1325, 1330 (Fed.Cir.2011) (quoting Scarborough v. Principi, 541 U.S. 401, 407, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004)). The EAJA was not, however, “intended to chill the government’s right to litigate or to subject the public fisc to added risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong.” Stillwell v. Brown, 6 Vet.App. 291, 303 (1994).
By holding that the Secretary was not substantially justified when the Board followed then-binding precedent, the majority undercuts the Board’s obligation to apply the law, puts the Secretary in the impossible position of having to second-guess this Court’s judgment while an appeal to the Federal Circuit is pending, and chills the Government’s ability to invoke substantial justification as a way to protect the public fisc. To then recklessly suggest that the Secretary should have stayed this case despite an en banc majority ruling in his favor, ante at 86, the majority underscores its disregard for the consequences of this decision and invites the Secretary to ignore the directives of the Court in future cases. This view of the law is simply untenable.
There are strong arguments both for and against a finding of substantial justification in this case. On the one hand, as the Federal Circuit explained in Johnson II, “the plain language of § 3.321(b)(1) is unambiguous,” and there is “no policy justification for interpreting § 3.321(b)(1) in the way that the government advocates.” 762 F.3d at 1366. On the other hand, a majority of this Court, sitting en banc, determined that § 3.321(b)(1) was ambiguous and that the Secretary’s interpretation was reasonable, Johnson I, 26 Vet.App. at 245, and the Board was bound by that decision at the time it decided Mr. Butts’s *92 case, see Ribaudo, 20 Vet.App. at 560; Ramsey, 20 Vet.App. at 38.
I would hold that the Secretary was substantially justified at the administrative stage, and so I would deny Mr. Butts’s EAJA application. I must, therefore, respectfully dissent.

. Although I agree with my colleagues in the majority that no one factor should be viewed as universally dispositive, see ante at 82-83, I disagree with the majority’s implication that each of the factors must be accorded equal weight. On the contrary, under the totality of the circumstances of a particular case, it may very well be that, as here, a single factor so outweighs the others as to be dispositive on the facts of that case.

. I do not mean to suggest that the Board cannot or should not "decide the material *90 issues of law and fact presented on the record,” 38 U.S.C. § 7104(d)(1), but rather that an individual Board decision cannot speak authoritatively for the Secretary or deviate from established VA policy, see 38 C.F.R. §§ 19.5 (2015) (setting forth the authorities binding on the Board), 20.1303 (2015) (Board decisions are not precedential).

. The majority attempts to discount the significance of Johnson I by noting that the majority in that case "did not render a de novo interpretation of § 3.321(b)(1).” Ante at 82. This red herring improperly conflates reasonableness with correctness. Although the Court in Johnson I, as the majority correctly notes, did not interpret § 3.321(b)(1) in the first instance, the Court did hold that § 3.321(b)(1) was ambiguous and that the Secretary’s interpretation was “not unreasonable, plainly erroneous, or inconsistent with the regulation,” Johnson I, 26 Vet.App. at 245. I stand by my “assum[ption] that the varying viewpoints [in Johnson 7] were all reasonable," ante at 82, including the views of the two Judges in the majority of both Johnson I and this case.

. The only deviation from this system—total disability ratings based upon individual un-employability—involves the unique question of whether a claimant is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities,” thereby explicitly requiring an analysis of the combined effects of multiple conditions. 38 C.F.R. § 4.16(a) (2015).