ORDERED that this appeal is DISMISSED for lack of jurisdiction.

**Duc Tu JOHNSON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–80.

United States Court of Veterans Appeals.

Sept. 5, 1996.

Christopher B. Keller, Austin, TX, was on the brief, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel;

Adrienne Koerber, Deputy Assistant General Counsel; and Barbara J. Finsness, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and MANKIN * and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Duc Tu Johnson, widow of deceased veteran Elbert Johnson, appeals a September 29, 1993, Board of Veterans' Appeals (BVA or Board) decision finding that payments under the Minimum Income Widow provision of the Survivor Benefit Plan, an annuity from the Department of the Navy, are countable income for improved death-pension purposes. The parties filed briefs, and, in response to a September 22, 1995, Court order, the Secretary filed a supplemental memorandum; the appellant did not file a response to that pleading. For the reasons that follow, the Court will affirm the Board's decision.

## I. Background

The veteran served in the United States Navy from February 1944 until he retired in June 1964. R. at 20. In November 1962, he and the appellant were married (R. at 22, 25), and in September 1971 he died of ventricular fibrillation due to myocardial infarction (R. at 27). The appellant filed a claim with a Veterans' Administration (now Department of Veterans Affairs (VA)) regional office (RO) for VA service-connected dependency and indemnity compensation or non-service-connected death pension in October 1971. R. at 29–32. A November 1971 VARO decision denied her claim because the evidence did not show that the veteran's death was service connected, and noted that she was not entitled to pension because her annual income was more than $3,500. R. at 34. In August 1974, the appellant submitted a statement to VA requesting pension benefits and attached a statement of her income and net worth. R. at 42, 44. A March 1975 VA award letter indicated that she was awarded death-pension benefits effective August 1974. R. at 73. The death-pension benefits were apparently terminated in January 1981 based on her report that during 1980 she began earning

$900 monthly, an amount that exceeded the improved-pension income limit then provided by law. See R. at 89.

In April 1987, the appellant sought to reopen her claim for VA death-pension benefits. R. at 93–94, 96. In a June 1987 statement, she notified VA that she did not then "receive S[urvivor] B[enefit] P[lan] from the U.S. Navy" and had "no income". R. at 99. A June 1987 VA letter informed her that her claim had been approved, effective May 1987, based on countable annual income of $0, and that she was entitled to a monthly pension rate of $333.00. R. at 102.

In a January 1991 letter, the Department of the Navy informed the appellant that she was entitled to an annuity under the Minimum Income Widow (MIW) provision of the Survivor Benefit Plan (SBP). R. at 153. The appellant advised VA in a February 1991 letter that in September 1990 she had applied to the Navy for MIW–SBP benefits under Public Law 92–425 (see R. at 185–87) and that she had been awarded $359.00 per month, beginning March 1, 1991 (or February 1, 1991, see R. at 131). R. at 127; see R. at 121, 140. She further stated that she was "granted retroactive annuity amounts for the period May 1, 1987[,] to January 30, 1991[,]" in the net amount of $12,686.82 (R. at 127–28, 152), gross amount of $15,858.53 (R. at 140, 152). In an April 1991 letter to VA, the appellant stated that she had not received her VA pension check on April 1, 1991, that she had learned "that the check had been withheld in satisfaction of the indebtedness which was created by the overpayment", and that her MIW payment should not be "considered as income for the purpose of eligibility for VA pension". R. at 131. She requested that the amount of her withheld pension benefit be restored. R. at 132.

A June 1991 VA letter informed the appellant that her pension award was amended to a monthly award of $0, effective February 1991, based on countable annual income of $20,166 (retroactive lump-sum payment of $15,858 plus other retirement income of $4,308) from January 30, 1991. R. at 144. In a July 1991 letter to VA, the appellant

* Judge Mankin participated in this case, but died before its final disposition.

contended that, under section 653 of Public Law 100–456 (note to 10 U.S.C. § 1448), the MIW–SBP amounts paid should not be counted as income for the purpose of determining eligibility for VA death pension. R. at 151. VA responded in November 1991: "MIW–SBP was not counted under the laws that were in effect at the time the laws [the appellant] quoted were passed. However, under improved pension (PL 95–588), MIW–SBP is counted as a retirement income. Since you were drawing improved pension when the income was received, it was counted." R. at 156. The appellant filed a Notice of Disagreement in November 1991 (R. at 158), and the RO issued a Statement of the Case (SOC) in May 1992 (R. at 160–63).

In her June 1992 VA Form 1–9 (Substantive Appeal to the BVA), she stated that, "[w]hile as a general proposition th[e] statement [in the SOC that payments made to a widow by the Department of the Navy under MIW–SBP are countable as income for VA purposes under the improved pension program] is correct, it does not address the question regarding payments made by the Navy under the provisions of section 4, PL 92–425, MIW/SBP." R. at 168. She argued that the plain meaning of Public Law 92–425 and Public Law 100–456 is that "payments made to the widow under the [MIW–SBP] under PL92–425, is not to be counted for purposes of·determining eligibility to receive non-disability death pension." R. at 169. She contended that to the extent that VA's regulations in 38 C.F.R. §§ 3.271 and 3.272 provided otherwise, they were contrary to statutory authority. R. at 169–70.

In the September 1993 BVA decision here on appeal, the Board concluded that "the appellant's [SBP] annuity . . . is countable income for purposes of improved death pension benefits." R. at 6.

## II. Analysis

In discontinuing the appellant's VA pension benefit in February 1991, the RO noted that its monthly award of $0 was based on countable annual income of $20,166 (retroactive lump-sum MIW payment of $15,858 plus other MIW retirement income of $4,308 ($359 MIW monthly payment times 12)). The appellant contends that payments to her under the MIW provisions of the SBP, 10 U.S.C. § 1447–55, *see* historical notes to 10 U.S.C. § 1448 (Pub.L. No. 92–425), are not countable as income for purposes of computing improved death pension. Brief (Br.) at 2.· She states that she received improved death-pension benefits, effective May· 1987; that she received notice of the $359 monthly award of MIW benefits in late January 1991 and a retroactive award for benefits from the period May 1, 1987, through January 30, 1991, in the gross amount of $15,858; and that her death-pension benefits were discontinued effective February 1, 1991, because countable income, after including both the current and retroactive award of MIW, exceeded the appellant's maximum annual rate in 1991 of $4,780. *Ibid.*

### A. Plain Meaning of the Statute

[1–4] In statutory interpretation, if "the plain meaning of a statute is discernible, that 'plain meaning must be given effect.'" *Tallman v. Brown,* 7 Vet.App. 453, 460 (1995) (citation omitted); *see also Brown v. Gardner,* —— U.S. ——, ———–——, 115 S.Ct. 552, 555–56, 130 L.Ed.2d 462 (1994). "Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." *Gardner v. Derwinski,* 1 Vet.App. 584, 586 (1991) (citing *Bethesda Hospital Ass'n v. Bowen,* 485 U.S. 399, 403–05, 108 S.Ct. 1255, 1258–59, 99 L.Ed.2d 460 (1988)), *aff'd sub nom. Gardner v. Brown,* 5 F.3d 1456 (Fed.Cir.1993), *aff'd,* —— U.S. ——, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). "[W]hen a reviewing court 'find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.'" *Smith (Edward F.) v. Derwinski,* 2 Vet.App. 429, 431 (1992) (quoting *Demarest v. Manspeaker,* 498 U.S. 184, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991)). The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner,* 1 Vet.App. at 586–87 (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). The "absurd result" exception to the plain meaning rule is narrow and limited to

situations "where it is quite impossible that Congress could have intended the result ... and where the alleged absurdity is so clear as to be obvious to most anyone." *Gardner,* 1 Vet.App. at 587 (quoting *Public Citizen v. U.S. Department of Justice,* 491 U.S. 440, 470–71, 109 S.Ct. 2558, 2575, 105 L.Ed.2d 377 (1989) (Kennedy, J., concurring)).

The improved death-pension program for non-service-connected veterans of war-time service, "certain surviving spouses", and "certain surviving children" was enacted in chapter 15 of title 38, U.S.Code, on November 4, 1978, by the Veterans' and Survivors' Pension Improvement Act of 1978. Pub.L. No. 95–588, 92 Stat. 2497; 38 U.S.C. § 1501. Under chapter 15, a surviving spouse of a veteran of a period of war who meets the service requirements prescribed in section 1521(j) is entitled to "pension at the rate prescribed by this section, as increased from time to time under section 5312 of this title." 38 U.S.C. § 1541(a). Section 1521(j) provides that a veteran is entitled to VA improved pension if the veteran served in the active military, naval, or air service for ninety days or more during a period of war. 38 U.S.C. § 1521(j). The veteran's service during 1944 to 1964 was during World War II and the Korean conflict, periods of war under 38 U.S.C. § 101(8), (9), (11). *See also* 38 C.F.R. §§ 3.2(d),(e), 3.3(a)(3) (1995).

Survivors' death-pension benefits are governed by income limitations which require that, when there is a child of the veteran in the custody of the surviving spouse, pension is to "be paid to the surviving spouse at the annual rate of [$7,240] plus an additional [$1,404] for each additional child" and that "the rate payable shall be *reduced by the amount of the surviving spouse's annual income* and, subject to subsection (g) ·of this section, the annual income of each such child." 38 U.S.C. §§ 1541(c), 5312(a); 38 C.F.R. §§ 3.3(b)(4)(iii), 3.23(a), (b), (d)(5) (1995); 60 Fed.Reg. 65,089–90 (Dec. 18, 1995) (bracketed rates represent current rate as increased by the Secretary, pursuant to 38 U.S.C. § 5312(a), effective December 1, 1995).

Section 1503(a) of title 38, U.S.Code, provides: "In determining annual income under this chapter [15, 'Pension for Non–Service–Connected Disability or Death for Service'], all payments of any kind or from any source (including salary, retirement or annuity payments, or similar income, ... ) shall be included", with certain specified exclusions. 38 U.S.C. § 1503(a). The ten specified exclusions from countable income in this subsection dò not include MIW–SBP payments received pursuant to section 4 of Public Law 92–425. VA regulations provide in 38 C.F.R. § 3.271 that "[p]ayments of any kind from any source shall be counted as income during the 12–month annualization period in which received unless specifically excluded under [38 C.F.R.] § 3.272." 38 C.F.R. § 3.271 (1995). The Code of Federal Regulations shows that section 3.272 is the implementing regulation for 38 U.S.C. § 1503. 38 C.F.R. § 3.272 (1995). This section contains a list of sixteen exclusions from countable income for the purpose of determining entitlement to improved pension for veterans and survivors, and does not include an exclusion for MIW–SBP payments. *See* 38 C.F.R. §§ 3.261(a)(14), 362(e) (any payments under MIW–SBP will be considered "Retirement or Annuity" income for VA pension purposes).

In *Martin (Mary Ann) v. Brown,* the Court noted the following with respect to countable income of improved death-pension benefits:

> The statute and VA regulations provide that "annual income", as defined by statute and applicable regulation, includes payments of any kind from any source, unless explicitly exempted by statute or regulation. 38 U.S.C. § 1503; 38 C.F.R. § 3.271; *see* 38 C.F.R. § 3.272 (setting forth exclusions from income).

*Martin,* 7 Vet.App. 196, 199 (1994).

■ The Court holds today that the plain meaning of the above provisions of law requires that MIW–SBP payments be included as annual income and that the appropriate deductions be made. *See Gardner* and *Martin,* both *supra; Walker v. Brown,* 8 Vet. App. 356, 358 (1995) (examining statutory provisions under chapter 15 and holding that their plain meaning required income from total disability income provision (TDIP) of National Service Life Insurance be countable

as annual income for VA improved-pension purposes because TDIP payments are not listed as one of enumerated exclusions). The Court thus holds that the BVA did not err in concluding that, under the statutory and regulatory scheme, the MIWSBP payments should have been considered as countable income.

### B. Legislative History

■ "Although '[r]ecourse to the legislative history ... is unnecessary in light of the plain meaning of the statutory text,' we may look to the legislative history ' "to determine whether there is a *clearly expressed* legislative intention contrary to the statutory language." ' " *Gardner*, 5 F.3d at 1459 (quoting *Darby v. Cisneros*, 509 U.S. 137, 147, 113 S.Ct. 2539, 2545, 125 L.Ed.2d 113 (1993), and *Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 395 (Fed.Cir.1990) (itself quoting *Madison Galleries, Ltd. v. United States*, 870 F.2d 627, 629 (Fed.Cir.1989))). However, "because the statutory language is clear, 'we do not analyze th[e] history from a neutral viewpoint' "; there must be an "extraordinarily strong showing of clear legislative intent in order to convince us that Congress means other than what it ultimately said." *Gardner*, 5 F.3d at 1460 (quoting *Glaxo*, 894 F.2d at 396) (citation omitted).

The legislative history of the Veterans' and Survivors' Pension Improvement Act of 1978, Pub.L. No. 95–588, confirms the plain meaning of the statute. The Joint Explanatory Statement prepared by the House and Senate Committees on Veterans' Affairs that accompanied the conference report on Public Law 95–588 stated:

Both the House bill and the Senate amendment restructure the non-service-connected pension program for needy wartime veterans who are permanently disabled and totally disabled from non-service-connected causes or age 65 and over and the needy survivors of wartime veterans.

Under both the House bill and the Senate amendment, the restructuring replaces the present method of determining the veteran's or surviving spouse's pension amount by using a maximum monthly rate, reduced by other income of the veteran or surviving spouse according to rate-decrement income limitation formulae. Under both the House bill and the Senate amendment, there would be a maximum annual rate, reduced dollar for dollar by the other income of the pensioner, including generally, the income of all family members for whom additional pension is paid; and *fewer allowable exclusions from other income would be permitted than under the current program.*

Joint Explanatory Statement, Pub.L. No. 95–588, 95th Cong., 2d Sess. (1978) (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 5583, 5703. As to countable income and income exclusions, the Joint Explanatory Statement provided:

Current law provides that a pensioner's total annual non-pension income shall be included in determining the amount of pension payable, unless a specific exclusion from such income is authorized by law. Both the House bill and the Senate amendment continue this provision for the restructured program, and each provides for the following six exclusions:

(1) donations from public or private relief or welfare organizations;

(2) amounts equal to amounts paid by a surviving spouse or child for the veteran's just debts and the unreimbursed expenses of the veteran's last illness and burial;

(3) amounts equal to amounts paid by a veteran for the last illness and burial expenses of a veteran's child;

(4) fire insurance policy proceeds;

(5) profit from the sale of real or personal property other than in the course of a business; and

(6) amounts in joint accounts acquired by reason of the death of the other co-owner.

*Id.* at 5708. The Joint Statement also noted other exclusions provided for in either bill and the resolution reached in the conference agreement, but made no mention of benefits under MIW–SBP. *Id.* at 5708–11.

### C. The Appellant's Arguments

The appellant is not correct in asserting that Public Law 92–425 and section 653(d) of Public Law 100–456 provide an exemption for her MIW–SBP benefits from countable income. The Court notes that in a November 1991 letter an RO stated that "MIW–SBP was not counted under the laws that were in effect at the time the laws [the appellant] quoted [Armed Forces–Survivor Benefit Plan, Pub.L. No. 92–425, 86 Stat. 706 (1972), and National Defense Authorization Act, Fiscal Year 1989, Pub.L. No. 100–456, § 653, 102 Stat.1918, 1919 (1988) ] were passed". R. at 156. The Secretary informs the Court that that letter was "in error" and that "although the RO knew the correct procedures to apply to ascertain the benefits to which Appellant was or was not entitled, it did not know how to correctly articulate the statutory authority for them." Supplemental (Suppl.) Memorandum (Mem.) at 2, 4. He asserts that "Public Law 92–425 *created* the SBP/MIW so it is incorrect to say the SBP/MIW was not counted when that law was passed," and the letter "should have simply informed [the appellant] that the provision of § 653(d) ... did not apply to her because her husband did not die before November 1, 1953". Suppl. Mem. at 4.

*i. Public Law 92–452.* The appellant argues that the plain meaning of Public Law 92–425 is that MIW payments are in addition to any VA death-pension benefits and that certain VA regulations, 38 C.F.R. §§ 3.271 and 3.272 (1995), are inconsistent with the statutory authority and plain meaning of Public Law 92–425, and are thus unlawful pursuant to *Gardner, supra.* As noted above, the Court finds that the plain meaning of the statutory provisions in chapter 15 of title 38 is quite to the contrary and certainly does not support the appellant's contentions. In 1971, the MIW/SBP was enacted as part of Public Law 92–425. Section 4 of that law (*see* historical note to 10 U.S.C. § 1448 for chapter 73 annuities) provides that an annuity shall be paid to:

(a) A person—

(1) who, on the effective date of this Act [Sept. 21, 1972,] is, or within one calendar year after that date becomes, a widow of a person who was entitled to retired or retainer pay when he died;

(2) who is eligible for a pension under subchapter III of chapter 15 of title 38, United States Code, or section 9(b) of the Veterans' Pension Act of 1959 (73 Stat. 436); and

(3) whose annual income, as determined in establishing that eligibility, is less than $1,400. . . .

Pub.L. No. 92–425, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.S.C.A.N. 816, 824; 10 U.S.C. § 1455; *see* Exhibit A attached to the Secretary's Suppl. Mem.

Public Law 92–425, "The Survivor Benefit Plan", is codified at 10 U.S.C. §§ 1447–1455 and is a subchapter of chapter 73, "Annuities Based on Retired or Retainers Pay", which is codified at 10 U.S.C. § 1431–1460. Section 1450, "Payment of annuity: beneficiaries", of the same subchapter, provides:

(h) Except as provided in section 1451 of this title ["Amount of annuity"], an annuity under this section is in addition to any other payment to which a person is entitled under any other provision of law. *Such annuity shall be considered as income under laws administered by the Veterans' Administration.*

10 U.S.C. § 1450(h) (emphasis added). This statutory provision is consistent with the plain meaning of 38 U.S.C. § 1503, and MIW/SBP annuity payments under this subchapter are thus "considered as income under laws administered by [VA]", which includes entitlement to VA improved death-pension benefits. *Ibid.*

The legislative history of Public Law 92–425 also confirms the plain meaning of 38 U.S.C. § 1503, to wit, that payments under this subchapter of chapter 73 are counted as income for VA improved pension purposes. In the Senate report on S. 3905, one stated purpose of the reported bill was to "[p]rovide a program guaranteeing *a minimum annual income* of $2,100 per year to current widows of military retirees." S.Rep. No. 92–1089, 92nd Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3288, 3289 (emphasis added). Principal elements of the bill as reported included the following: "Present widows

of retirees will be guaranteed a minimum income of about $2,100 annually. If the widow's income is less than $1,400, a Defense supplement will be paid to the widow to bring the widow's income up to $1,400. This amount, together with a payment from the Veterans' Administration, will total about $2,100." *Id.* at 3291–92. The Senate report also stated:

> Under S. 3905 the widow of a retiree who is eligible for the [VA] Non–Service–Connected Death Pension and whose income, as measured by VA rules (which includes income from public and private sources), is less than $1,400 per year will be provided a supplement which will bring her income up to $1,400 per year. As a result, the combination of the widow's entitlements from the VA and the $1,400 will provide her an annual income of about $2,100.

*Id.* at 3309.

The Senate report's sectional analysis stated that section 4(a) "is intended to assure an income for such widows of at least $2,100 (not including income excluded by the VA in determining eligibility for that pension)", *id.* at 3320; and that section 4(b) "specifies that the amount of the annuity authorized by subsection (a) shall be an amount which when added to the widow's 'income' as used in determining eligibility for a VA pension plus an annuity being received under RSFPP [ (Retired Serviceman's Family Protection Plan) ] equals $1,400 annually", *id.* at 3321.

The appellant argues that the legislative intent behind MIW–SBP (Pub.L. No. 92–425) was to provide a certain minimum level of income to qualifying widows and that this income would be *in addition to* payments from VA. The appellant notes that Rep. Pike, Chairman of the House Armed Services Committee, reporting on the House bill, stated:

> If under the means test of the [VA] non-service-connected death pension program, the widow's income is less than $1,400 a year, the bill provides that the [Department of Defense] will make a supplemental payment sufficient to bring her income up to $1,400. At that level the death pension she is then eligible for from the [VA] will

bring her total income to approximately $2,000 per year. I want to make clear … that this program in no way interferes with the programs administered by [VA]. …

Br. at 3 (quoting 117 Cong. Rec. H37,196 (1971)). The appellant maintains that this intent was made express under subsection (b) of section 4, which provides:

> The annuity under subsection (a) of this section shall be in an amount which when added to the widow's income determined under subsection (a)(3) of this section, plus the amount of any annuity being received under sections 1431–1436 of title 10, United States Code, *but exclusive of a pension described in subsection (a)(2) of this section,* equals $1,400 a year.

Pub.L. No. 92–425, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.S.C.A.N. 816, 824; 10 U.S.C. § 1455, § 4(b) (emphasis added).

Neither section 4(b) nor Chairman Pike's floor statement supports the appellant's position. Rather, both may be read as supportive of the position of the Secretary, who contends as follows: "[T]he Congressional intent in enacting Pub.L. 92–425 was that the Department of Defense would provide this certain minimum level of income. (In [1972], when the program was enacted, this amount was $1,400.) Then, additional payments from the VA would bring the level of income up to the maximum amount set by law for VA death pension purposes [in 1972, the income limit for VA death pension was $2,200]." Br. at 7; Suppl. Mem. at 5 n. 1. He argues that the clear meaning of the statute is that "in no case does the recipient receive more than the statutorily set maximum annual rate for VA purposes." Br. at 8.

This Court has noted that "[o]nly the most extraordinary showing of contrary intentions from [legislative history] would justify a limitation on the 'plain meaning' of the statutory language." *Talley v. Derwinski,* 2 Vet.App. 282, 286 (1992) (quoting *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)); *see In the Matter of the Fee Agreement of William G. Smith in Case*

*Number 90–58*, 1 Vet.App. 492, 496, 506 (1991) (Steinberg, J., concurring) (noting that case presented "exceptional circumstance where facially unambiguous language is not conclusive because unequivocal, repeated, totally consistent, and highly authoritative legislative history provides a clear expression of legislative intent to the contrary"). Congress knows how to, but did not, exempt from income all payments made under the SBP. The Court concludes that no such "extraordinary showing of contrary intent" can be divined in this case. *Talley*, 2 Vet. App. at 286.

*ii.  Absurd result.*  The appellant contends that an interpretation of the statute so as to include the MIW–SBP payments in computing VA improved death-pension benefits leads to an absurd result. *See Zang v. Brown*, 8 Vet.App. 246, 252–54 (1995). She argues that "the Board's decision renders the MIW superfluous because, at best, its benefits are made unnecessary and, at worst, it results in disqualification from entitlement to both death pension and MIW benefits." Br. at 6.  She maintains that MIW benefits are made unnecessary because, if counted as income and if the total income is then less than the maximum VA death pension, death-pension payments make up the difference to bring the total income up to a minimum level. Br. at 4–5.  The Court notes that MIW/SBP payments come from the budget of the Department of Defense (DoD) and not from that of VA.  It is not unreasonable to suppose that Congress could have been concerned about which department's budget would bear which benefit amount.  In any event, allocation between various departments' budgets is an inherently legislative function, well within Congress' proper exercise of its legislative power under Article I of the U.S. Constitution. *See Lyng v. International Union, United Auto., Aerospace and Agri. Implement Workers of America, UAW*, 485 U.S. 360, 373, 108 S.Ct. 1184, 1193, 99 L.Ed.2d 380 (1988) ("review of distinctions that Congress draws in order to make allocations from a finite pool of resources must be deferential"); *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980) (Court cannot set aside legislative classification simply because

it "is not made with mathematical nicety" (quoting *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970); *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911))).

The appellant asserts that, in the worst-case scenario, disqualification from both benefits results when MIW payments cause the claimant to meet or exceed the maximum annual amount for VA death-pension purposes.  She states that this occurs because, once the widow is no longer eligible for death-pension benefits, she also does not qualify for MIW because MIW status is conditioned upon being eligible for death pension.  This argument fails because her death-pension eligibility is determined before she actually receives the MIW–SBP.  The Secretary notes that this worst-case scenario (SBP payments will cause the recipient to have excess income for VA purposes so that she will lose both pension and SBP payments) could never happen because the MIW/SBP annuity limitation amount is always set at an amount below the VA death-pension annual rate. Br. at 9; *see also* DoD Military Retired Pay Manual, DoD Financial Management Regulation, Military Pay, Policy, and Procedures, Vol. 7, Part B, DoD 7000.14–R, Part 9, section 91002 (Nov. 30, 1992) (to the effect that VA sets the maximum MIW annuity payable and advises the service concerned), attached as Exhibit E to the Secretary's Suppl. Mem; 10 U.S.C. §§ 1401a(b)(1), 1451(g), 1457(d).  In the appellant's case, she had excess income because of the retroactive lump-sum SBP/MIW payment (not because of a monthly SBP/MIW payment).  When she reapplies for VA death-pension benefits, the SBP/MIW monthly payment will be counted as income and she will receive the difference between that amount and the maximum VA death-pension rate then in effect.

*iii.  Public Law 100–456.*  To the extent that the appellant relies on section 653 of the National Defense Authorization Act, Fiscal Year 1989, Public Law 100–456, in support of her contention that MIW–SBP payments are not included as countable income for VA improved pension purposes, such reliance is misplaced.  Section 653(d) provides:

 

An annuity paid to a surviving spouse under this section is in addition to any pension to which the surviving spouse is entitled under subchapter III of chapter 15 of title 38, United States Code, or section 306 of the Veterans' and Survivors' Pension Improvement Act of 1978 (38 U.S.C. § 1521 note), and any payment made under the provisions of section 4[of] Public Law 92–425. An annuity paid under this section shall not be considered as income for the purposes of eligibility for any such pension.

Pub.L. No. 100–456, § 653(d), 102 Stat.1918, 1919 (1988). Section 653(a)(1)(A) specifically provides that an annuity shall be paid to "the qualifying surviving spouse of each member of the uniformed services who ... died before November 1, 1953...." The regulation in 38 C.F.R. § 3.272(n) (implementing section 653, Pub.L. 100–456, 102 Stat.1918, 1991) provides the following as a source of excludable income:

> *Survivor benefit annuity.* Annuity paid by the Department of Defense under the authority of section 653, Public Law 100–456[,] to qualified surviving spouses of veterans who died prior to November 1, 1953. (September 29, 1988)[.]

38 C.F.R. § 3.272(n) (1995). The annuity described in Public Law 100–456 is not applicable to the appellant because her husband died after November 1, 1953. This law provides for an annuity separate from an MIW–SBP annuity.

Although the appellant was given incorrect information in November 1991 by the RO as to her MIW–SBP payment not being counted under this law at the time it was passed, as this Court stated in *McTighe v. Brown,* 7 Vet.App. 29 (1994), "erroneous advice given by a government employee cannot be used to estop the government from denying benefits." *Id.* at 30 (relying on *OPM v. Richmond,* 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990)). Therefore, although the appellant may have received erroneous information from VA personnel, the applicable laws and regulations clearly require that MIW–SBP payments be included as countable income for VA improved pension purposes, and there is no authority for VA to exclude those payments from countable income.

## III. Conclusion

Upon consideration of the record and the briefs of the parties, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, procedural processes, articulation of reasons or bases, or application of the benefit-of-the-doubt rule—under 38 U.S.C. §§ 1503, 7104(a), (d)(1), and 7261 and the analyses in *Gilbert v. Derwinski,* 1 Vet. App. 49 (1990). Therefore, the Court affirms the September 29, 1993, BVA decision.

AFFIRMED.