# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-2009

ROBERT E. COOPER, JR., APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided February 26, 2021)

*Christopher F. Attig*, of Little Rock, Arkansas, was on the brief for the appellant.

*William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; *Kenneth A. Walsh*, Deputy Chief Counsel; and *Jessica K. Grunberg*, Senior Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, MEREDITH, and TOTH, *Judges*.

MEREDITH, *Judge*, filed the opinion of the Court. TOTH, *Judge*, filed an opinion concurring in part and in the judgment.

MEREDITH, *Judge*: The appellant, Robert E. Cooper, Jr., through counsel appeals a February 26, 2019, Board of Veterans' Appeals (Board) decision that denied his request to exclude state unemployment compensation from his total countable income for purposes of calculating the amount of his non-service-connected (NSC) pension. Record (R.) at 4-11. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This matter was referred to a panel of the Court to determine whether the exclusion of "donations from public or private relief or welfare organizations" from countable income for NSC pension purposes in 38 U.S.C. § 1503(a)(1) requires VA to exclude state unemployment compensation from countable income. For the following reasons, the Court answers that question in the negative and will thus affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Marine Corps from March to September 1972, R. at 770-71, and from February to April 1973, R. at 768-69. A VA pension management

center (PMC) granted entitlement to NSC pension in October 2008. R. at 507-18. In July 2013, the appellant notified VA that he was in receipt of Social Security Disability Insurance, R. at 364-66, and, in October 2013, the PMC reduced his monthly NSC pension payment, R. at 355-59. VA also created an overpayment but later waived the debt. R. at 341, 354.

In 2014, VA notified the appellant that it adjusted his countable income from December 2008 through 2010 based on his collection of unemployment compensation from the state of Wisconsin and that, as a result, VA had overpaid him $13,094. R. at 308-13, 331; *see* R. at 342. The appellant disagreed with VA's creation of the overpayment and requested a waiver of the debt.[1] R. at 282-88, 324. The PMC clarified in a December 2014 letter to the appellant that the overpayment was not due to the compensation he received based on his participation in a VA Compensated Work Therapy (CWT) program in 2008, but rather the state unemployment compensation that he collected in 2010 and requested that he clarify the issue with which he disagreed. R. at 278-79. The appellant responded that he did not believe his state unemployment compensation should be counted as income. R. at 277. Specifically, he asserted that, because the wages he received prior to collecting unemployment compensation were obtained through the CWT program and are not countable as income, the unemployment compensation he received after ending that employment also should not count towards income. *Id.* After the PMC issued a Statement of the Case, in which it concluded that unemployment income was countable income for NSC pension purposes and that the overpayment was properly created, R. at 164-200, the appellant perfected his appeal to the Board, R. at 151, 156-58.

The Board issued the decision on appeal in February 2019, denying the appellant's request to exclude unemployment compensation from his total countable income for purposes of NSC pension. R. at 4-11. First, the Board found that, contrary to the appellant's argument, VA had not counted payments from his participation in the CWT program as income for NSC pension purposes. R. at 8. Next, the Board found that, unlike CWT wages, "there is no applicable exclusion [in 38 C.F.R. § 3.272] for [unemployment compensation] from the [appellant's] countable income" for NSC pension purposes and therefore his request to exclude such income must be denied. *Id*. This appeal followed.

---

[1] The Court notes that the issue of waiver of the appellant's debt based on his receipt of unemployment compensation remains pending before VA. *See* Secretary's Brief (Br.) at 3.

2

## II. ANALYSIS

### A. The Parties' Arguments

The appellant contends that, because state unemployment compensation is "public relief for the unemployed," it constitutes a donation from public relief or welfare organizations and is thus excluded from countable income under 38 U.S.C. § 1503(a)(1). Appellant's Br. at 4; *id.* at 5-16; Reply Br. at 1-14. He further asserts that, based on a harmonious reading of section 1503 and 38 U.S.C. § 1718(g)(3), which provides an exclusion from income for payments received as a result of participation in VA's CWT program, it follows that unemployment compensation should be excluded from countable income. Appellant's Br. at 11-15. He avers that any other reading would lead to an absurd result and he asks the Court to reverse the Board's decision. *Id.* at 14, 16.

The Secretary argues that the Court's decision in *Walker v. Brown*, 8 Vet.App. 356, 358 (1995), controls the outcome here because the Court in *Walker* established that "there is 'nothing ambiguous'" about the language of section 1503(a), which includes all payments except for those specifically enumerated. Secretary's Br. at 6 (quoting *Walker*, 8 Vet.App. at 358); *see id.* at 6-7. He further asserts that unemployment compensation is not synonymous with welfare; not all tax-funded benefits should be considered donations from a public relief organization, especially given that some Social Security benefits are included as countable income; and Congress could have specifically excluded unemployment compensation, but it did not. *Id.* at 8-10. Regarding Congress's specific exclusion of CWT income, the Secretary contends that CWT is not an unemployment benefit but rather a "'clinical vocational rehabilitation program'" that is designed to promote employment opportunities for veterans. *Id.* at 11 (quoting *Compensated Work Therapy*, VETERANS HEALTH ADMIN., https://www.va.gov/health/cwt/ (last visited Mar. 11, 2020)). The Secretary avers that the appellant has not shown that it would be absurd or irrational to treat unemployment compensation and CWT wages differently, and therefore, the Secretary urges the Court to affirm the Board's February 2019 decision. *Id.* at 7-13.

### B. Legal Landscape

A veteran may be entitled to NSC pension if he or she served during a period of war (or was discharged or released from service during a period of war for a service-connected disability), meets specific income and net worth criteria, and is permanently and totally disabled due to non-service-connected disabilities and not due to his or her own willful misconduct. 38 U.S.C. § 1521(a), (j); 38 C.F.R. § 3.3(a)(3) (2020). The maximum annual rate of pension is "reduced by

the amount of the veteran's annual income." 38 U.S.C. § 1521(b), (c). Generally, "all payments of any kind or from any source" are included when calculating the veteran's income, but certain categories of payments are specifically excluded from that calculation. 38 U.S.C. § 1503(a).

"The legislative history of [38 U.S.C. § 1503][2] makes it clear that Congress sought to limit the availability of pension benefits to those who were truly needy" and that,"[i]f a person could obtain income from any other source, he would have to do so before qualifying for pension benefits." *Peed v. Cleland*, 516 F. Supp. 469, 475 (1981). "The Joint Explanatory Statement prepared by the House and Senate Committees on Veterans' Affairs that accompanied the conference report on [the Veterans' and Survivors' Pension Improvement Act of 1978,] Public Law 95–588[,] stated:

> Both the House bill and the Senate amendment restructure the non-service-connected pension program for needy wartime veterans who are permanently disabled and totally disabled from non-service-connected causes or age 65 and over and the needy survivors of wartime veterans.

> Under both the House bill and the Senate amendment, the restructuring replaces the present method of determining the veteran's or surviving spouse's pension amount by using a maximum monthly rate, reduced by other income of the veteran or surviving spouse according to rate-decrement income limitation formulae. Under both the House bill and the Senate amendment, there would be a maximum annual rate, reduced dollar for dollar by the other income of the pensioner, including generally, the income of all family members for whom additional pension is paid; and *fewer allowable exclusions from other income would be permitted than under the current program.*"

*Johnson v. Brown*, 9 Vet.App. 369, 373 (1996) (quoting Joint Explanatory Statement, Pub. L. No. 95–588, 95th Cong., 2d Sess. (1978) (emphasis added), *reprinted in* 1978 U.S.C.C.A.N. 5583, 5703).

## C. Statutory Interpretation

This case presents a question of statutory interpretation. The statute at issue, 38 U.S.C. § 1503, provides that, when calculating annual income for purposes of NSC pension, "all payments of any kind or from any source . . . shall be included except" for those forms of payment specified in subsections 1503(a)(1) through 1503(a)(12). 38 U.S.C. § 1503(a). Among the exclusions from countable income referred to in section 1503(a) is "donations from public or private relief or

---

[2] In 1991, Congress renumbered 38 U.S.C. § 503 as section 1503. Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, § 5(a), 105 Stat. 378, 406 (1991).

4

welfare organizations." 38 U.S.C. § 1503(a)(1). The Secretary's implementing regulations mirror the relevant portions of the statute. *See* 38 C.F.R. § 3.271(a) (2020) ("Payments of any kind from any source shall be counted as income during the 12-month annualization period in which received unless specifically excluded under § 3.272."); 38 C.F.R. § 3.272(a) (2020) (excluding from countable income "[d]onations from public or private relief, welfare, or charitable organizations").

At the outset, we acknowledge two issues relevant to our discussion. First, the United States Court of Appeals for the Federal Circuit (Federal Circuit) dealt with a similar provision in the context of federal income tax in *Abrahamsen v. United States*, 228 F.3d 1360, 1362 (Fed. Cir. 2000). There, former employees argued that their receipt of exit-incentive payments should not fall within the tax code's definition of "'gross income,'" defined as "'*all income* from whatever source derived.'" *Id.* (quoting 26 U.S.C. § 61(a)) (emphasis added). Rather, like here, the assertion was that the payments should fall within an enumerated exclusionary provision. *Id.* The Federal Circuit began its analysis by noting that the definition of gross income is "extraordinarily broad" and that the Supreme Court has "'emphasized the corollary to § 61(a)'s broad construction, namely, the default rule of statutory interpretation that exclusions from income must be narrowly construed.'" *Id.* at 1362-63 (quoting *Comm'r v. Schleier*, 515 U.S. 323, 328 (1995)). The Federal Circuit ultimately concluded that the exit-incentive payments did not fall within the narrow exclusion for payments received "'on account of personal injuries or [physical] sickness.'" *Abrahamsen*, 228 F.3d at 1363 (quoting *Schleier*, 515 U.S. at 337). The principles announced in *Abrahamsen* are instructive for purposes of construing the provision at issue here, which broadly includes "all payments" in income, subject to enumerated exceptions. 38 U.S.C. § 1503(a).

Second, in *Walker*, this Court found "nothing ambiguous about the meaning of" the provision that "'all payments of any kind or from any source . . . shall be included,' with the exception of certain enumerated categories." 8 Vet.App. at 358 (quoting 38 U.S.C. § 1503(a)). There, the Court concluded that payments from the total disability income provision of a National Service Life Insurance policy were countable as income for NSC pension purposes because these payments are not listed as one of the enumerated exclusions. *Walker*, 8 Vet.App. at 358. The Court essentially reiterated the same principle in *Johnson*, by holding that "the plain meaning of [section 1503 and §§ 3.271, 3.272] require[] that . . . payments [under the Minimum Income Widow provision of a Survivor Benefit Plan, an annuity from the Department of Navy,] be included as

5

annual income and that the appropriate deductions be made" because no specific exclusion for such payments existed. 9 Vet.App. at 372.

However, the Court in *Walker* and *Johnson* considered only whether the specific types of income at issue were countable and offered little in the way of additional statutory interpretation. The appellant's contention here is that, although unemployment compensation is not specifically enumerated, these payments should nonetheless be excluded from countable income because unemployment compensation falls within the meaning of "donations from public or private relief or welfare organizations." 38 U.S.C. § 1503(a)(1); *see* Appellant's Br. at 5-16. Because *Walker* and *Johnson* make clear that all payments are included as countable income unless specifically excluded, the Court must determine whether, narrowly construed, unemployment compensation falls within section 1503(a)(1)'s exclusion.

*1. Donations from Public Relief or Welfare Organizations*

"When a statute is at issue, we begin with the statutory language." *McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008); *see Williams v. Taylor*, 529 U.S. 420, 431 (2000). "The statute's plain meaning is derived from its text and its structure." *McGee*, 511 F.3d at 1356; *see Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute."), *aff'd sub nom. Gardner v. Brown*, 5 F.3d 1456 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994). The "plain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006), *aff'd*, 240 F. App'x 422 (Fed. Cir. 2007).

The first question in statutory interpretation is always "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. The interpretation of a statute is a question of law that the Court reviews de novo, without deference to the Board's interpretation. *See Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

Neither party disputes that "unemployment compensation" is not explicitly enumerated in section 1503. As noted above, the appellant avers that it should nonetheless be excluded from

annual income because unemployment compensation is a "donation[] from public . . . relief or welfare organizations," which is an enumerated exclusion. 38 U.S.C. § 1503(a)(1); *see* Appellant's Br. at 5-16; Reply Br. at 1-14. Because there are no statutory or regulatory definitions of the terms used in section 1503(a)(1), the Court may assume that the words take on their "'ordinary, contemporary, common meaning,'" which may be derived from general use dictionaries. *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

A "donation" is variously defined as "an act or instance of presenting something as a gift, grant, or contribution," RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 582 (2d ed. 2001) [hereinafter WEBSTER'S]; "a gift, esp[ecially] to a charity; something, esp[ecially] money, that someone gives to a person or an organization by way of help," BLACK'S LAW DICTIONARY 617 (11th ed. 2019) [hereinafter BLACK'S]; or "something that is given to a charity, esp[ecially] a sum of money," NEW OXFORD AMERICAN DICTIONARY 515 (3d ed. 2010) [hereinafter OXFORD]. Further, *Black's* defines a "gift" as a "voluntary transfer of property to another without compensation."[3] BLACK'S at 831. In other words, the plain language of the statute pertains to voluntary gifts of, typically, money from one party to another and often involves a charity.

Next, section 1503(a)(1) requires that the donation be received from public or private relief or welfare organizations. 38 U.S.C. § 1503(a)(1). "Public" means "of, pertaining to, or affecting a population or a community as a whole," and "of, pertaining to, or being in the service of a community or nation, esp[ecially] as a government officer." WEBSTER'S at 1562-63; *accord* BLACK'S at 1483 (defining "public" as "[o]f, relating to, or involving an entire community, state, or country"). The noun it modifies—"relief"—means "aid or assistance given to those *in need*; esp[ecially], financial aid provided by the state." BLACK'S at 1544 (emphasis added). For these purposes, "welfare" means "financial or other assistance to an individual or family from a city, state, or national government." WEBSTER'S at 2157; *see* BLACK'S at 1910 (defining "welfare" as "[a] system of social insurance providing assistance to those who are *financially in need*, as by providing food stamps and family allowances[;] . . . [a]lso termed (historically) poor relief; state benefit; (BrE) income support" (emphasis added)). And, finally, an "organization" is "[a] group that has formed for a particular purpose." BLACK'S at 1326.

---

[3] As a verb, a "gift" is "[a] thing so transferred." BLACK'S at 831.

Taken together, the plain meaning of "public . . . relief . . . organization[]" is understood as a governmental entity providing aid or assistance to a population in need; and a "public . . . welfare organization[]" similarly pertains to a governmental entity formed for the purpose of providing financial or other assistance to individuals and communities in need. And, the payment provided by these organizations—the donation—must be a voluntary or charitable transfer of money to a recipient in need.

*2. Unemployment Compensation*

Here, it is undisputed that the appellant in 2010 received state unemployment insurance benefits. R. at 5, 342. To determine if the statutory language in section 1503 plainly answers whether the appellant's receipt of that unemployment compensation falls within the exception for "donations from public . . . relief or welfare organizations," as the appellant contends, we turn to the nature of these payments. 38 U.S.C. § 1503(a)(1). In that regard, the appellant argues that unemployment compensation is "undeniably public relief" and "the oldest form of public welfare." Appellant's Br. at 11-12. He contends that modern unemployment compensation benefits are "donations . . . given to unemployed workers, based on financial need, from the 'moneys of the nation,' and are used to 'relieve the unemployed.'" *Id.* at 13-14. In support of that assertion, he argues that state unemployment insurance benefits "'provide temporary financial assistance to workers unemployed through no fault of their own who meet [the state's] eligibility requirements,'" *id.* at 11 (quoting https://www.benefits.gov/benefit/1828), and points to the Social Security Act of 1935, Pub. L. No. 74-271, 49 Stat. 620 (codified as amended at 42 U.S.C. §§ 301-1397), and the source of unemployment compensation—state and federal unemployment taxes on businesses. Appellant's Br. at 11-14. His arguments are not persuasive.

Pursuant to 42 U.S.C. § 501, the federal government provides amounts to states to "assist[] . . . in the administration of their unemployment compensation laws." "The policy of allowing 'broad freedom [to states] to set up the type of unemployment compensation they wish' has been a basic theme of the program," *Baker v. Gen. Motors Corp.*, 478 U.S. 621, 633 (1986) (quoting *Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 483 (1977)), so there is no singular definition of unemployment compensation that we may consult. However, *Black's* defines "unemployment compensation" as "[c]ompensation paid at regular intervals by a state agency to an unemployed person, esp[ecially] one who has been laid off. [] Also termed *unemployment insurance*; *unemployment benefit*." BLACK'S at 354. "Unemployment insurance" is defined as "[a] type of

8

social insurance that pays money to workers who are unemployed for reasons unrelated to job performance. • Individual states administer unemployment insurance, which is funded by payroll taxes." *Id.* at 959. In other words, the basic trigger for unemployment compensation is the lack of a job.

As an initial matter, the appellant does not address how unemployment compensation comports with the plain meaning of donations, nor does he cite any specific authority supporting his contention that unemployment payments are public *relief*. In that regard, although the stated purpose of the Social Security Act of 1935 includes "provid[ing] for the general welfare by . . . enabling the several States to make more adequate provision for . . . the administration of their unemployment compensation laws," 49 Stat. at 620, the legislative history and U.S. Supreme Court caselaw support the conclusion that unemployment payments are made as a matter of right and are not need-based. In particular, a Senate Report accompanying 74 H.R. 7260,[4] reflects that an important distinction was drawn between unemployment benefits and public relief:

> The essential idea in unemployment compensation is the creation of reserves during periods of employment from which compensation is paid to workmen who lose their positions when employment slackens and who cannot find other work. Unemployment compensation *differs from relief* in that payments are made as a matter of right, *not on a needs basis*, but only while the worker is involuntarily unemployed.
>
> . . . .
>
> Except for a few standards which are necessary to render certain that the State unemployment compensation laws are genuine unemployment compensation acts and *not merely relief measures*, the States are left free to set up any unemployment compensation system they wish, without dictation from Washington.
>
> . . . .
>
> Unemployment compensation will not completely eliminate the necessity for unemployment relief. To the extent, however, that unemployment reserves are accumulated, *they will reduce the necessity for relief*.

S. REP. NO. 74-628, at 11, 13, 15 (1935) (emphases added). These excerpts reflect that Congress intended for unemployment compensation to serve a purpose *other than* public relief. *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018) (considering the purpose behind a statutory scheme in interpreting a statutory provision). Indeed, in *California Department of Human Resources*

---

[4] H.R. 7260 became law on August 14, 1935, and it is referred to as the Social Security Act of 1935. Pub. L. No. 74-271, 49 Stat. 620 (codified as amended at 42 U.S.C. §§ 301-1397).

*Development v. Java*, the U.S. Supreme Court examined the legislative history of the Social Security Act and similarly observed that the purpose of unemployment compensation was "to give prompt if only partial replacement of wages to the unemployed, [and] to enable workers 'to tide themselves over until they get back to their old work or find other employment, *without having to resort to relief.*'" 402 U.S. 121, 131 (1971) (emphasis added) (quoting H.R. REP. NO. 615, 74th Cong., 1st Sess., 7 (1935)); *see Java*, 402 U.S. at 131-32 (explaining "that the unemployment compensation insurance program was not based on need in the sense underlying the various welfare programs that had their genesis in the same period of economic stress" and that unemployment compensation "serv[es] to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity"); *see also New York Tel. Co. v. New York State Dep't of Labor*, 440 U.S. 519, 543 n.43 (1979). *But see* Appellant's Br. at 12 ("Not only is state unemployment compensation undeniably public relief, the benefits may well be the oldest form of public welfare, and one of the first forms of public relief in the United States."). The Supreme Court further explained that "the Social Security Act received its impetus from the Report of the Committee on Economic Security," *Java*, 402 U.S. at 130, which recommended "'[t]his should be a contractual right not dependent on any means test,'" *id.* at 131 (quoting Report of the Committee on Economic Security, Hearings on S. 1130 before the Senate Committee on Finance, 74th Cong., 1st Sess., 1321-22). This all reflects that unemployment compensation is not relief; rather, it is generally provided as a matter of right based on the employment status of the recipient.

We thus turn to the question of whether unemployment compensation payments—a state's regular disbursement of funds set aside for the purpose of providing compensation to workers that have lost employment for reasons unrelated to job performance—constitute donations from public relief or welfare organizations, which we understand to mean voluntary gifts/transfers of money to an individual or population in need from government assistance organizations. The Court holds that they are not. As discussed above, the words donation, relief, and welfare in 38 U.S.C. § 1503(a) all connote payments premised upon the recipient's need, whereas unemployment compensation turns on the recipient's employment status without regard to need. In sum, the appellant has not demonstrated that the ordinary common meaning of the terms in section 1503(a)(1) includes unemployment compensation.[5]

---

[5] In light of this conclusion, the Court need not address on the merits the appellant's contention that the

### 3. Compensated Work Therapy

The above conclusion, however, is not the end of the matter because the Court must address the appellant's additional contention that to interpret section 1503(a)(1) as not excluding unemployment compensation from countable income would lead to an absurd result. Appellant's Br. at 13-15; *see United States v. Turkette*, 452 U.S. 576, 580 (1981) ("[A]bsurd results are to be avoided."); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) (applying "the canon that a statutory construction that causes absurd results is to be avoided if at all possible"). Specifically, he asserts that it would be inconsistent to exclude from countable income compensation from CWT, as outlined in 38 U.S.C. § 1718(g)(3), but not income from unemployment compensation because both constitute public relief for the unemployed. Appellant's Br. at 7, 14-15. The Court disagrees.

First, as discussed above, the appellant has not shown that Congress intended unemployment compensation to constitute a form of public relief. Second, as argued by the Secretary, the unemployment compensation program that we know of today existed when Congress enacted the Veterans' Pension Act of 1959 and when Congress amended the pension program through the Veterans' and Survivors' Pension Improvement Act of 1978. Secretary's Br. at 8. *Compare* Pub. L. No. 74-271, 49 Stat. 620 (Aug. 14, 1935), *with* Pub. L. No. 86-211, 73 Stat. 432 (Aug. 29, 1959), *and* Pub. L. No. 95-588, 92 Stat. 2497 (Nov. 4, 1978). If Congress had wanted to specifically exclude unemployment compensation from countable income for NSC pension purposes, it knows how and could have done so.

Congress took such action when it later specified that "[a] distribution of funds" based on a veteran's participation in a CWT program "shall be considered for purposes of [NSC pension] a donation from a public or private relief or welfare organization" and thus excluded from countable income. Veterans' Benefits Improvement and Health Care Authorization Act of 1986, Pub. L. No. 99-576, § 205, 100 Stat. 3248 (codified at 38 U.S.C. § 1718(g)(3)). Congress has not made a

---

Secretary has broadly interpreted "donations from public or private relief or welfare organizations." 38 U.S.C. § 1503(a)(1); *see* Appellant's Br. at 7-8. In this regard, the appellant points only to a section in VA's *Adjudication Procedures Manual, M21-1*, which instructs adjudicators not to "count any type of benefit for which eligibility is based on the claimant's financial need, such as Welfare [and] Supplemental Security Income." Appellant's Br. at 8; *see* M21-1, pt. V, subpt. iii, ch. 1, § I.3.b. The Court notes, however, that the M21-1 instructs that unemployment compensation is countable income for pension benefits, and, as discussed above, the appellant has not shown that unemployment compensation is based on financial need. *See* Secretary's Br. at 12-13 (citing M21-1, pt. V, subpt. iii, ch. 1, § I.1.a).

similar amendment to the Social Security Act specifying that unemployment compensation shall be similarly designated or listed unemployment compensation as an exclusion to income in 38 U.S.C. § 1503(a), as it has done for certain other categories of payments. *See* 38 U.S.C. §§ 1503(a)(5) (adding in 2012 various reimbursement payments from accidents and losses), (a)(9) (adding in 1978 payments equal to the amount of expenses for education or vocational rehabilitation), (a)(10) (adding in 1978 the income of a veteran's dependent child), (a)(11) (adding in 2010 state-provided veterans' benefits), (a)(12) (adding in 2004 proceeds from life insurance policies); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 384 (2013) (finding that Congress's use of explicit language limiting jurisdiction in one act "caution[ed] against" inferring a similar limitation in a different act); *Astrue v. Ratliff*, 560 U.S. 586, 594-95 (2010) (finding that differences between Social Security Act and Equal Access to Justice Act provisions reveal that "Congress knows how to make fees awards payable directly to attorneys where it desires to do so"); *Dep't of Housing and Urban Dev. v. Rucker*, 535 U.S. 125, 132 (2002) (comparing 21 U.S.C. § 881(a)(7) with 42 U.S.C. § 1437d(*l*)(6) and concluding that the differences between the statutes "show[] that Congress knew exactly how to provide an 'innocent owner' defense" and did not do so in section 1437d(*l*)(6)).

Third, the legislative history of the CWT program does not support the appellant's assertion that the program and unemployment compensation are so similar that they should be treated the same for pension purposes. *See* Appellant's Br. at 7, 14-15. In this regard, the House of Representatives highlighted the unique nature of participation in the CWT program in a House Report accompanying H.R. 5192:[6]

> Congress has long viewed VA's incentive work therapy and [CWT] programs as valuable components of its array of therapeutic and rehabilitative activities for veteran patients. The "work" experiences in which these patients participate provide both a clinical opportunity to evaluate the patients' physical and mental capacities for work and encouragement for the development of good work habits– emphasizing attendance, reliability, productivity, and personal responsibility.

> Consistent with its recognition of the value of these programs, *Congress has treated these "work-for-pay" activities very differently from conventional employment*. It has provided, for example, that such patients are not considered employees of the United States (38 U.S.C. [§] 1718(a)). Further, *recognizing the therapeutic value of a work regimen with monetary incentives*, Congress has also provided that

---
[6] H.R. 5192 passed the House of Representatives on October 1, 1992, and is included in H.R. 5193, which reflects the compromise agreement between the Senate and House of Representatives Committees on Veterans' Affairs, also known as the Veterans Health Care Act of 1992. Pub. L. No. 102-585, 106 Stat. 4943.

> neither a veteran's participation in incentive [work therapy] or [CWT], nor a veteran's receipt of monies based on that participation, may be considered as a basis for denying or discontinuing a total disability rating for purposes of VA compensation or pension (38 U.S.C. [§] 1718(f)).

H.R. REP. NO. 102-622, at 7 (1992) (emphases added).[7] The legislative history supports the conclusion that Congress intended for the CWT program to be differentiated from ordinary work based on the rehabilitative and therapeutic components of participation in CWT. *Id.* The appellant does not contend, and the legislative history does not reflect, that receipt of unemployment compensation has similar therapeutic or rehabilitative characteristics.

For these reasons, the Court concludes that the appellant's argument—that "[t]o think that Congress meant to include one form of public relief for the unemployed, but exclude others, is unreasonable"—is unsupported and not persuasive. Appellant's Br. at 14. The Court is not persuaded that the two categories are so similar that unemployment compensation should also be considered a "donation" for NSC pension purposes and, as discussed above, the nature of the unemployment benefits reflects that those payments are not considered public relief.

## D. Application

Here, the Board stated that, unlike CWT wages, "there is no applicable exclusion . . . for [unemployment compensation] from the [appellant's] countable income" for NSC pension purposes and therefore his request to exclude such income must be denied. R. at 8. Because the appellant has not shown that the nature of unemployment compensation payments requires the Court to find that they fall within the plain meaning of "donations from public or private relief or welfare organizations" and should therefore be excluded from countable income for purposes of NSC pension pursuant to 38 U.S.C. § 1503(a)(1)—the sole issue on appeal—the Court concludes that he has not demonstrated that the Board erred in its determination. Accordingly, the Court will affirm the Board's decision that the appellant's 2010 unemployment compensation must be considered countable income for NSC pension purposes.

---

[7] House Report 102-622 accompanied H.R. 5192 and is included as a related report in the 1992 Joint Explanatory Statement on H.R. 5193. *See* Joint Explanatory Statement, 102 CONG. REC. S17,890 (daily ed. Oct. 8, 1992), *reprinted in* 1992 U.S.C.C.A.N. 4186, 4186.

## III. CONCLUSION

After consideration of the parties' pleadings and a review of the record, the Board's February 26, 2019, decision denying the appellant's request to exclude state unemployment compensation from his total countable income for purposes of calculating the amount of his NSC pension is AFFIRMED.

TOTH, *Judge*, concurring in part and in the judgment: I regard our analysis of the plain meaning of 38 U.S.C. § 1503(a) and the guidance from caselaw as well-reasoned and sufficient to resolve the dispute without having to venture into the vagaries of congressional reports and the like. For this reason, I join the panel's fine opinion in all aspects save those that discuss legislative history.